(73 South. 717)

No. 21579.

LORENTZ v. THIESEN.

(Dec. 11, 1916. Rehearing Denied Jan. 15, 1917.)

*(Syllabus by the Court.)*

1. LIBEL AND SLANDER &#x229B;71—ACTIONS—DEFENSES.

In an action for slander, the only defenses are a denial, a justification, or a confession under mitigating circumstances.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 173; Dec. Dig. &#x229B;71.]

2. LIBEL AND SLANDER &#x229B;94(1)—ACTIONS—PLEADING.

Truth should be specially pleaded.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 219; Dec. Dig. &#x229B; 94(1).]

3. PLEADING &#x229B;93(2) — DEFENSES — INCONSISTENT DEFENSES.

Defendant in action of slander cannot be heard to deny the authorship of the slander and claim privilege or justification.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 189, 190; Dec. Dig. &#x229B;93(2).]

4. WITNESSES &#x229B;405(2) — CROSS-EXAMINATION—COLLATERAL ISSUES.

Defendant is bound by testimony elicited by him from the plaintiff on collateral issues; he cannot deny it.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1273; Dec. Dig. &#x229B;405(2).]

5. LIBEL AND SLANDER &#x229B;101(1), 114—MALICE—PRESUMPTION.

The law presumes malice upon the one hand, and injury upon the other, when slanderous words are used; and damages will be awarded in a substantial amount, but not for an amount too great for the defendant to bear.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 273, 277, 278, 352; Dec. Dig. &#x229B; 101(1), 114.]

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by Mrs. Joseph Lorentz against Albert Thiesen. From a judgment for plaintiff, defendant appeals. Affirmed.

S. A. Montgomery and J. D. Dresner, both of New Orleans, for appellant. Titche & Rogers, of New Orleans, for appellee.

SOMMERVILLE, J. Mrs. Lorentz, a widow, and the mother of five major children, alleges that she has resided at 1502 Annette street, in the city of New Orleans, for 12 years, and that her two unmarried daughters reside with her at that house; that Albert Thiesen, defendant, a near neighbor of hers, has slandered her and her family by charging, to the chief of police of the city, that she (petitioner) is keeping or conducting an immoral house at her residence; and that he requested an investigation, with the view of having petitioner and her daughters removed from her residence on that ground. She asks for $3,000 damages. Defendant appeared and moved to strike from the petition all reference to the daughters of plaintiff, on the ground that a parent cannot recover damages for mental anguish suffered by her on account of the mental suffering of her children, and that it would tend to inject into the trial features which are not properly a part of it. On the trial of the case, through his counsel, defendant "objected to any evidence being introduced in this case with respect to the daughters," saying:

"There is no admission or allegation as to any misconduct on the part of the daughters. We have strictly averred that we have made no charge as to the daughters."

Defendant filed an answer, denying all allegations contained in plaintiff's petition, except such as might be admitted in the answer. He avers:

"That he did not report to the authorities of this city that plaintiff was 'keeping or conducting an immoral house,' but defendant does aver that his children were growing up in his home, and that he and his wife, after having been annoyed, embarrassed, and humiliated for a long time on account of the conduct of plaintiff and her many callers when she was at home alone, that he, acting as a husband, and a father of children, the owner of his home and the adjoining premises, from which he derived revenues in partial support of his family, finally did report to the proper authorities, as was his duty under the law, the condition of affairs for which plaintiff was responsible."

He denies he acted with malice and without probable cause; and alleges that the communication made to the police authorities, as officers of the law, was "absolutely privileged under the law, and that same was reported to them in good faith for a lawful purpose, but not for publicity."

There was judgment in favor of plaintiff and against defendant in the sum of $550; and defendant has appealed. Plaintiff has answered the appeal, and asks for an increase of the judgment to $3,000.

[1, 2] Defendant, in his answer, denies that he made the charge set forth in the petition, and therefore did not plead that the charge was true; and he did not plead justification. These only could have been his defenses: Williams v. McManus, 38 La. Ann. 161, 58 Am. Rep. 171; Jaggard on Torts, p. 525. As defendant did not plead the truth of the allegation, but denied it, evidence offered by him to show the truth of same cannot be considered. The evidence was admitted, over objection by plaintiff, before plaintiff had proved that defendant made the specific charge that she was keeping or conducting an immoral house. But the evidence offered and admitted was not sufficient to prove the truthfulness of the charge, and it was properly rejected by the jury in finding their verdict.

Defendant has filed the following assignment of errors:

"(1) That the jury did not consider the testimony of defendant and his witnesses tending to show that he had probable cause for asking the authorities to make a proper investigation, and that in doing so defendant acted without malice.

"(2) That the failure of the jury to consider the evidence tending to show probable cause on the part of the defendant in instituting the investigation he did must have been due, at least in part, to the fact that the jury was impressed more with the credibility of plaintiff than with the credibility of the defendant; and that therefore the jury should have been allowed to hear the testimony which defendant offered to introduce in reference to the character and color of the plaintiff, and which was excluded by the court.

"The record shows that plaintiff had sworn that she was white; and as plaintiff, by the nature of her suit, placed her identity at issue, defendant should have been permitted to show, as he declared in court he could show, that plaintiff is not white; and this testimony should have been allowed to go to the jury as affecting the credibility of plaintiff.

"(3) That plaintiff alleged that she was a person of previous good character, and that she has always borne a good reputation in the community in which she lived, and that she thus puts the question of her previous good character at issue, and, this being a suit for personal damages on account of slander to her character, the character of plaintiff then becomes one of the material facts at issue; and, since plaintiff introduced evidence to establish her allegation of previous good character, defendant therefore had the absolute right under the law to contradict this allegation and to show, as he stated in court he could show, that plaintiff was not a person of previous good character; and he should have been allowed by the trial court to introduce this evidence in order to rebut the contention of plaintiff, in that respect, both for the purpose of testing and impeaching her credibility and disproving her claim on account of injury to the good character which she alleges she has always borne, and which she also alleges has been injured by the investigation put on foot by defendant when he caused the proper authorities to make an investigation of her conduct.

"(4) That defendant, having probable cause in asking the investigation to be made by the proper authorities, performed an act in aid of the public authorities in the maintenance of good order, and approved by the law, and which is therefore privileged."

The first assignment, with reference to probable cause on the part of the defendant for making the charge against plaintiff, is not sustained by the record. Defendant, in his answer, denies that he made the charge that plaintiff was the keeper of an immoral house. And, in answer to the question, "Did you say any word to him [the chief of police] about this woman running an immoral house?" he replied, "Positively no." But on cross-examination to the question, "Your charge, therefore, to the chief of police was that Mrs. Lorentz was guilty of sexual immorality, wasn't that it?" he answered, "That is about it." And again:

"Q. You told the chief of police as a fact that you saw them going there? And you requested the chief of police to make an investigation and ascertain whether you were not correct in the

suspicions that you had? A. Yes, sir. Q. Then you told the chief of police that Mrs. Lorentz was guilty of immorality with those men? A. That is about it. Q. Now isn't that a fact? A. Yes, sir. Q. And you asked him to make a quiet investigation, so that there wouldn't be any 'come back'? A. Yes, sir."

And again, on cross-examination, defendant testified as follows:

"Q. But you, in connection with the police and others you saw there, you communicated to the chief of police that Mrs. Lorentz's house was an immoral house, and if your suspicions were justified you wanted her removed? A. You want me to answer that; that is what I told Chief Reynolds. Q. That is your answer? A. Yes, sir."

Defendant admitted the allegation of plaintiff to the effect that he (defendant) had charged that she was keeping an immoral house, and it was for the jury to decide whether the evidence showed that he had probable cause or not for making the charge; and it will be presumed that the jury did consider the testimony of the defendant and his witnesses on this point, and came to the conclusion that he made the charge without probable cause, and with malice, and the evidence in the record sustains the conclusion of the jury.

[4] The second assignment of errors is that:

"The jury should have been allowed to hear the testimony which defendant offered to introduce as to the character and color of the plaintiff, and which was excluded by the court."

The evidence as to the character of the plaintiff was not excluded, except as to some matters said to have occurred five or more years before the charge named in this suit was made. They were too remote. As to the color of plaintiff, she was asked by defendant the question, and she answered that she was a white woman. This was a matter entirely collateral to the issue involved in the case, and defendant was bound by her answer. The court did not err in refusing to go into the question of the color of plaintiff. The charge of keeping an immoral house

was derogatory to plaintiff's character whether she was a white or a colored woman. The evidence was immaterial.

The third assignment is a repetition of the second.

[3] The fourth assignment is based upon the allegation that he had shown probable cause in asking for the investigation at the hands of the police; but the jury and the court have found that he made the charge referred to, and caused the investigation to be made, without probable cause, and his claim that his communication to the chief of police was made in the interest of good order and was privileged failed. He could not be heard to deny the slander, and claim privilege. Miller v. Roy, 10 La. Ann. 231; Harrison v. Jurgielewiez, 28 La. Ann. 238; Hyatt v. Lindner, 133 La. 614, 63 South. 241, 48 L. R. A. (N. S.) 256.

Defendant admitted that he had charged to the chief of police that plaintiff kept an immoral house, and asked that same be investigated. The chief of police testified to the same effect, and that he ordered an investigation to be made. The officers who made the investigation, and the neighbors who were questioned by the officers, testified that such investigation was made, and that there was no foundation for the complaint.

It appeared from defendant's testimony that the cause of the charge made by him was that he wished to have plaintiff removed from the neighborhood, and in this he is corroborated by his witness, Mrs. De Wint, who testified that she told defendant:

"If he didn't move her [plaintiff] or make her get out, that she would give up her house; and this is what started the trouble."

[5] The charge made by defendant against plaintiff was slanderous, was made maliciously, and without probable cause. Plaintiff is therefore entitled to damages; but in estimating these damages the jury doubtless took into consideration the fact that the evi-

dence tended to disclose that the defendant was not a man of means, and assessed damages at the sum of $550, as being commensurate with defendant's ability to make good the injury he had inflicted upon plaintiff. Delambre v. Kyes, 136 La. 686, 67 South. 552.

Judgment affirmed.

O'NIELL, J., concurs in the decree.