## PASTRANA v. KATZ.*
### No. 16759.

Court of Appeal of Louisiana. Orleans.

Feb. 21, 1938.

Weiss & Weiss, of New Orleans, for appellant.

Frederick J. Gisevius, Jr., and Joseph F. Blasi, Jr., both of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, Francis Pastrana, alleges that the defendant, Samuel Katz, slandered him on five separate occasions; once on July 13, 1936, and four times on July 14, 1936. The defamatory remarks attributed to the defendant are that he accused the plaintiff of being a forger and a thief.

* Rehearing refused March 21, 1938.

Judgment for damages in the sum of $300 was prayed for.

Defendant, in answer to the petition, filed a general denial.

At the trial below, there was judgment in favor of plaintiff as prayed for in the petition. Defendant has appealed from the adverse decision.

The issue presented for consideration is solely one of fact, i. e., Did the defendant slander the plaintiff as alleged? Certain facts recounting events, which happened prior to the alleged slanderous statements, are undisputed, and we find them to be as follows:

■ The defendant is engaged in the business of selling furniture in the city of New Orleans. On or about July 13, 1936, a young woman named Leona Fernandez came to defendant's place of business for the purpose of purchasing furniture. She was served by the defendant and made certain purchases from him amounting to $225. After the sale was consummated, she presented a United States government bonus check for $300, payable to one Basil C. Ridgeway, in settlement of the price. Upon the presentation of this check, the defendant told her that he would not honor it without the indorsement of Mr. Ridgeway. She then informed him that Mr. Ridgeway was her husband, and defendant agreed that, if Mr. Ridgeway would come to his place of business and indorse the check in his presence, he would cash it. Later in the day, Leona Fernandez appeared at defendant's place of business with an unidentified young man, whom she represented to be Mr. Ridgeway, the payee of the check. This young man indorsed the check and defendant thereupon marked the bill for the furniture "paid" and gave Leona the sum of $75 in cash. Defendant states that he knew Leona Fernandez for some time prior to this transaction, and that he was aware that she had a bad reputation. Shortly after he had cashed the government check, he became suspicious of the deal and entered into an investigation as to whether Leona and the person indorsing the check as Basil Ridgeway were imposters. Accordingly, he repaired to the home of Leona Fernandez' mother and was there informed by the latter that Leona was not married to Mr. Ridgeway; that she had been going with a man named Francis Pastrana, the plaintiff; and that, in all probability, the person who indorsed the check and represented himself to be Mr. Ridgeway

was the plaintiff. Thereupon, defendant went directly to plaintiff's residence, 816 St. Phillip street, in search of him.

The testimony, respecting the events which then occurred at the plaintiff's residence between plaintiff's mother (a Mrs. Morales) and the defendant, is highly conflicting. However, a reading of the record has convinced us that, with the exception of the slanderous remarks made by the defendant on his first visit to the plaintiff's home, the other alleged defamatory statements have not been proved by a preponderance of evidence. For this reason we find it only necessary to discuss the conversation which took place on defendant's initial call at the premises 816 St. Phillip street.

In substantiation of the allegations of his petition, with respect to the defamatory remarks made by the defendant on this first occasion, plaintiff produced six witnesses, all of whom (with the exception of Frederick Myers) subscribe to the charges. The first of these was John Walton, who testified that on July 13, 1936, he and his wife were renting a room in the premises 816 St. Phillip street from plaintiff's mother, Mrs. Blanche Morales. He states that some time in the afternoon of that day the defendant called at the house and engaged in a conversation with Mrs. Morales. This conversation is alleged by him to have taken place in the alleyway of the premises at a point which was near the room occupied by him and his wife. He asserts that defendant stated to Mrs. Morales that the purpose of his mission was to see Francis; that Francis and Leona Fernandez had stolen a government check; and that Francis had forged the name of Basil Ridgeway, the payee of the check. He further states that Mrs. Morales appeared surprised at the accusations made by the defendant; that she went into the house and returned with a picture of her son (the plaintiff being absent from home at the time); and that the defendant identified the picture exhibited by her as that of the man who had committed the fraud. Mr. Walton's testimony is corroborated, for the most part, by that of his wife, a Mr. Ducote, Mrs. Cortez, and the plaintiff's mother, Mrs. Morales.

After the defendant visited plaintiff's premises on the first occasion, he contacted Mr. Ridgeway, the payee of the check, and on the following day he and Mr. Ridgeway reported the theft of the check and the subsequent forgery to the United States Secret Service. Mr. Noah Lord, an agent of the department, made an investigation and later, when defendant was confronted with the plaintiff in person, he conceded that the latter was not the guilty man.

Defendant's version of the occurrence at plaintiff's home cannot be reconciled with the statements of plaintiff's witnesses. When first placed on the stand under cross-examination, he asserted that he went to plaintiff's residence for the purpose of ascertaining the identity of Francis but, afterwards, when testifying in his own behalf, he said that he went to 816 St. Phillip street for the purpose of finding out if Leona Fernandez lived there. Mr. Ridgeway and Mr. Lord, who were present at plaintiff's residence on the subsequent occasions, when certain slanderous remarks are alleged to have been made, exonerate the defendant from responsibility. Be that as it may, we find that, on the whole, the evidence preponderates in plaintiff's favor with respect to the first call by the defendant to the former's residence. It is apparent to us that the defendant (the victim of the fraudulent transaction), having visited the home of Leona Fernandez' mother and being informed by her that Francis Pastrana was a close friend and associate of Leona, became highly excited and immediately went to plaintiff's home and there made the accusations which give rise to this suit. It is evident that the district judge was of this opinion, and we concur in his finding on this question of fact.

Counsel for the defendant, in a vigorous attack upon the evidence of plaintiff's witnesses, point to certain inconsistencies appearing therein from which it is concluded that their testimony is unworthy of belief. A careful examination of these witnesses' statements reveal certain contradictions, but we do not believe that the particulars in contrast are vital or that they are sufficient to destroy the veracity of the declarants. Our Brother below had an opportunity to see and hear these persons testify and he was in a far better position than we are to determine the weight to be accorded their assertions.

Counsel also complain of the lower court's refusal to permit defendant to introduce evidence tending to prove justification for the slanderous words. We hold that the judge was eminently correct in sustaining the objection of plaintiff's counsel to such testimony for it is well settled that justification, in a slander suit, is a special defense, and that evidence to substantiate

it may not be admitted under a general denial. See McClure v. McMartin, 104 La. 496, 29 So. 227; Turnbow v. Wimberly, 106 La. 259, 30 So. 747; Schwing v. Dunlap, 130 La. 498, 58 So. 162; Lorentz v. Thiesen, 140 La. 663, 73 So. 717, and Reeder v. Pace, La.App., 171 So. 113, 114.

■ Defendant further submits that the damages of $300 awarded by the trial court are excessive. We do not think so. In Reeder v. Pace, supra, after discussing the jurisprudence with respect to the amount allowed in slander cases, we said: "On the whole, it seems that our courts have been inclined to grant larger damages than was given in the instant case, and while the awards are not entirely uniform, still, in most of the cases where the slander was unaccompanied by proof of actual damage, the amount of the judgment has been nearer $500. In view of the foregoing, we believe that the judgment of the court below is inadequate, and that it should be increased to the sum of $300, which is the amount sued for."

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.