## No. 11,465.

### NELSON TAYLOR VS. JOHN J. ELLINGTON.
### JOHN J. ELLINGTON VS. NELSON TAYLOR.
### (CONSOLIDATED.)

| 46 | 371 |
| 52 | 1374 |
| 46 | 371 |
| 104 | 182 |
| 46 | 371 |
| 111 | 336 |

With all due allowance for mitigating circumstances, damages will be awarded for injury to character by slander, aggravated by repetition. Civil Code, Arts. 1928 (Par. 3), 2315; Miller vs. Holstein, 16 La. 389; Savoie vs. Scanlan, 43 An. 967; Feray vs. Foote, 12 An. 894.

To charge an innocent man with burning another's property is actionable The law implies malice, and without proof of special injury damages will be given the injured party. Miller vs. Holstein, 16 La. 389; Feray vs. Foote, 12 An. 894; Savoie vs. Scanlan, 43 An. 967.

APPEAL from the Tenth District Court, Parish of Rapides. Coco, J.

*Hunter & Hunter* and *R. J. Bowman* Attorneys for Taylor, Plaintiff and Appellee:

No principle is better established than that he who is to blame and has caused the slanderous words is not entitled to the favorable consideration of the court.

*Ariail & White* Attorneys for Ellington, Defendant and Appellant:

1. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Revised Civil Code, Art. 2315.
2. There is no such thing in law as a *half-way* justification. Williams vs. McManus, 38 An. 161.
3. The charge that plaintiff, " the damn son of a bitch set fire to my stable, or burned my stable, to keep from paying rent," being an imputation of the commission of a crime, is, even under the common law, actionable *per se.* Cooley on Torts, pp. 195, 196.
4. But if the charge is not actionable *per se,* but is false, injurious, and made maliciously or *malo animo,* it combines all the elements necessary to support the action for slander. Spotorno vs. Fourichon, 40 An.; Miller vs. Holstein, 16 La. 389; Feray vs. Foote, 12 An. 894; Williams vs. McManus, 38 An. 161.
5. In actions of this character it is not necessary to prove malice; it may be implied. Canchoix vs. Dupuy, 3 La. 133; Tresca vs. Maddox, 11 An. 206.
6. Malice does not mean a spite against the individual, but *malus animus;* a wanton disposition, grossly negligent of the rights of others. *Idem.*

7.  Every person has a right to enjoy that degree of respect, good will and social or business distinction to which his own acts and his social and business habits entitle him, and any one who unlawfully interferes with this right by circulating slanderous reports renders himself liable for consequent damages   Williams vs. McManus, 38 An. 163, 164.

8.  Injuries done to one's feelings by slanderous words used toward him by another in public, such as "thief and rascal," furnish legitimate ground for an action in damages, and the amount of damages will be measured by the aggravated character of the language used.  Dufort vs. Abadie, 23 An. 2s0;  17 An. 64; 19 An. 322.

9.  Injuries to the feelings, and to one's social standing, are not susceptible of a precise admeasurement.  Still, in cases of this kind or class, such injuries are recognized as legitimate ground of action.  Dufort vs. Abadie, 23 An. 280;  19 An. 322; 17 An. 64; 38 An. 164.

10. Where a person publishes a slander or rumor, he can not escape liability by proving that a report was in circulation, or that a third person told him such report, before the time of speaking the words charged.  American and English Encyclopedia of Law, Vol. 13, pp. 402, 403;  Cade vs. Reddit, 15 An. 492; State vs. Benjamin, 15 An. 166.

11. When one, in an ebullition of passion, makes slanderous charges, and again repeats them when calm and cool, his being in a violent passion at the particular time alleged is no reason for abating the damages.  Sedgwick on Damages, Vol. 2, pp. 507, 508.

12. If a plea in mitigation is advanced without foundation, and not interposed in good faith, it is a high aggravation of the slander, an evidence of actual malice, and should materially enhance the damages.  Sedgwick on Damages, Vol. 2, p. 508, n.

13. In an action for slander, evidence of the repetition of the slanderous words after the commencement of the suit is admissible to show malice.  American and English Encyclopedia of Law, Vol. 13, p. 428.

14. In an action of slander, it is sufficient to prove the substance of the words charged.  Freeland vs. Lanfear, 2 N. S. 257.

---

The opinion of the court was delivered by

MILLER, J.   The plaintiff, Nelson Taylor, sues defendant, John J. Ellington, for damages for the loss of the stable and dwelling of Taylor, alleged to have been burned by the gross carelessness or imprudence of Ellington.  The plaintiff in the second entitled suit, John J. Ellington, sues Taylor for damages alleged to have been caused by his slander, imputing to Ellington the burning of the property.   The cases were consolidated, tried together, and the verdict was against each plaintiff, with divided costs.   Ellington appeals and Taylor answers, claiming an amendment of the judgment, so as to give him the damages he claimed.

The briefs place the cases before this court on their merits, without reference to some questions that arose during the trial.

Taylor vs. Ellington.

The suit of Taylor will be first considered. Does the record show his property was burned by the imprudence of Ellington? The dwelling and stable occupied a square of ground; the dwelling being separated from the stable. The wing of the stable fronted the street, and from the end of the wing the stable extended back to Fourth street. Toward the rear was the mule pen, and over this pen, more than ten feet from the ground, was the hay loft. In this loft the fire originated on the morning of the 8th September, 1892, and was discovered soon after Ellington came to the stable. The basis mainly, on which he is charged with responsibility for the fire seems to be his statement that in the early morning of the fire, while it was yet dark, he went to the rear of the stable to look for a horse, taking a lamp in his hand. This purpose, it is manifest, would not have carried him into the hay loft, or brought the lamp in proximity to the hay. The incident is discarded as affording any basis to hold Ellington.

It is claimed that other statements by him on the occasion of the fire place the responsibility for it upon him. The witnesses do not profess to give his words, but their impressions of his statements. One witness testifies: "Ellington said he lit the torch, went back, stayed a little while, and on returning to the front of the stable noticed the hay on fire." This would be a frail basis to conclude that the lamp in his hand, on the ground floor, ignited the hay in the loft ten feet above him. Another witness gives his recollection of the "idea" conveyed by Ellington: that he carried the lamp back to where the horse was; after walking in the barn with the open lamp or torch, looked back and saw the hay on fire, and that Ellington said he was not certain that the fire caught from the lamp, but did not see any other chance for it. The witness gives his idea of the significance of Ellington's language, and is quite positive of the accuracy of his impression. Still, it must be accepted, the deductions of a witness drawn from statements of another made months previous may be erroneous. When these deductions are in conflict with other testimony, their force is further diminished. Another witness puts it thus: Ellington, referring to a torch used in the stable described as a lamp on a pole, stated he reckoned the fire caught from the torch. This witness, alluding at the beginning to the lapse of time since the fire, stated his memory was very indistinct. On cross-examination he testified: Did not remember that Ellington used the word

"pole," but the witness "pictured" the lamp on a pole, such as used by brass bands. He further testified: Ellington said he did not know how the fire happened unless from the torch; but did not say the fire happened from the lamp "going into it." The comment suggested by all this testimony is, that Ellington himself had no convictions of the cause of the fire. To accept the statement attributed to him, as admitting he fired the stable would be to invest what he said with a meaning never intended and not warranted by the fair significance of language. The fire attracted a crowd naturally interested and curious as to the cause. The fire was in progress. In the excitement and confusion incident to the occasion, questions were put to Ellington and answered by him as to the origin of the fire. He himself was agitated. Under such circumstances his answers may have been misconceived. His answers indicate an inability to account for the fire, and aside from the lamp incident, avowed by him, he had no more knowledge on the subject than those whose questions he endeavored to answer. His answers practically, added nothing to the fact that he had gone to the rear of the stable with the lamp. If that fact connected him with the fire overhead in the loft, his answers neither detracted from or diminished the force of the circumstance. Another feature in the testimony as to his statement is impressive, and must be deemed to impair the effect of the testimony. The witnesses speaks of a "torch." The word conveys the significance of a flaming light elevated on a pole. It is this flaming light "pictured" by one of the witnesses that doubtless, colored his impressions of Ellington's statements. It was the idea of a man walking about a barn with a "torch" that impressed another witness. The supposed torch, it seems, was an open tin lamp carried in the hand, and in use in the stable by Taylor, and continued to be used by Ellington when he became the lessee. It is urged, too, that there is a discrepancy in Ellington's testimony and in his statements. The supposed variance is this: That one statement is, when he first saw the fire it was on top of the hay and spreading; another is, that going to the rear and returning he looked back and saw the fire; and another statement is, that going back to the mule pen he discovered the reflection of the fire on the back of the stable. If there is a discrepancy, in our opinion it is of no weight. There is before us also the testimony of Ellington. He is accorded the highest character by the testi-

mony. He testifies distinctly, that when he discovered the fire he was forty feet away with the lamp, and the lamp had no connection whatever with the fire.

The origin of the fire is not solved by the testimony. Whether caused by tramps entering through the openings claimed to exist in the stable, or by the heating of the hay, suggested by the testimony, is pure speculation. It would be hard to make a man responsible for a fire because he can not account for it, and harsher we think, to place the responsibility for the fire on Ellington in view of the testimony in the record.

On the issue of damages claimed by Ellington of Taylor the proof is, that the slanderous words charged in the petition, that Ellington had burned the property, accompanied with opprobrious epithets, were uttered publicly by Taylor and repeated. There was thus imputed to Ellington not only the burning, but the intentional burning of the property. For slander of reputation the law gives damages on the theory of injury sustained, as well as from public policy. The enforcement of the law in this respect is salutary. It substitutes the judicial vindication of character for the redress apt to be sought by violence, and affords some pecuniary compensation for the humiliation and injury wrought by slander. The case presents some features of mitigation for which we are disposed to make allowance. With all due consideration for the impression or belief of Taylor of wrong at the hands of Ellington, the law exacts that damages should be imposed for slander grave in character and aggravated by repetition. Civil Code, Arts. 2315, 1934, Par. 3; Miller vs. Holstein, 16th La., 389; Savoie vs. Scanlan, 43 An. 967.

It is therefore ordered, adjudged and decreed that the judgment of the lower court dismissing the suit of Nelson Taylor vs. John J. Ellington be affirmed with costs; that the judgment of the lower court dismissing the suit of John J. Ellington vs. Nelson Taylor be avoided and reversed, and it is now ordered, adjudged and decreed that John J. Ellington do have and recover from Nelson Taylor three hundred dollars damages with costs in both courts.