The opinion of the court was delivered by
Monroe, J.
Plaintiff alleges, in substance, that the defendant, falsely, maliciously, without probable cause, and for t'he purpose of inflicting injury, slandered him, by accusing him of having passed upon him (the defendant), a counterfeit five dollar bill, and that he (the plaintiff), has thereby been damaged in his reputation, feelings and business prospects, in the sum of $4,000; and he prays judgment therefor, and for $1,000 as punitory damages. The answer is a general denial. The case was tried before a jury, and, from a verdict and judgment in favor of the plaintiff for one dollar, both parties have appealed, and each has answered the appeal of the other; the plaintiff asking an increase in the amount allowed, and the defendant asking that the judgment appealed from be reversed and the suit dismissed. •
' The facts, as we find them from the evidence in the record, are as follows, to-wit:
The plaintiff is a minor, over eighteen years of age, who has always borne an excellent reputation, and is employed in a sash factory, turning his wages over to his mother, with whom he lives, and who keeps a hotel in the town of Franklin, in this State. Tie was emancipated by judgment of the court shortly after the occurrence out of which this suit arises, and, therefore, sues in his own name.
Upon the evening of September 16th, 1899, at about eight o’clock, being in front of the confectionery store of Boracco & Rabasa, he was asked by Rabasa to get small change for five silver dollars handed him for that purpose, which change Rabasa needed in his business. He, accordingly, crossed the street to the, store of Mr. Bell, and applied to Moore, a clerk who was employed there, for small change for the silver money, which he was holding in his hand; Moore declining to furnish it, he went to another place (Charpiat’s), and being unsuccessful there, he went to the defendant’s store and obtained the needed change, giving for it the five dollars which h® had received from Rabasa. About two hours later, between ten and half past ten o’clock, when the defendant was counting his cash, he found three five dollar bills in his drawer, one of which he thought was counterfeit,'and, after some conversation with his clerk, as to where the bill had come from, or was likely to have come from, he concluded that he had received it from the plaintiff. *1371 He accordingly went to the plaintiff’s home, which was closed for the night, knocked at the door, and, upon its being opened by the plaintiff, who was in the act of retiring to bed, charged the latter with having passed a counterfeit bill upon him, told him that he did not think that he would have played such a trick, or words to that effect; that he was not ¡a gentleman, etc., etc. To this plaintiff replied, denying that he had passed any bill on the defendant, counterfeit or otherwise, assuring him that he had given him only five silver dollars,' which he had received to be changed, and offering to go with him to Rabasa, from whom he had received them¿ in order that his statement might be, so far, corroborated. The defendant consented to this proposition, but continued en route, to insist that the plaintiff had passed upon him the bill, which he had in his hand-and which he declared to be counterfeit, and talked about prosecuting unless the supposed loss was made good. When they reached Rabasa’s store, that gentleman was asked what sort of money he had given the plaintiff to get changed, and he answered, at once, “five silver dollars”. The plaintiff, however, said, in substance, and in the presence of several persons, that, no matter what Rabasa had given to the plaintiff, the latter had passed on him, the defendant, the bill which he held in his hand, and that it was counterfeit. The parties then crossed the street, to Bell’s store, and Moore, Bell’s clerk, was asked what sort of money the plaintiff had requested him to change, and he answered that it was silver: The defendant, nevertheless, insisted, and by this time, in the presence of quite a crowd, variously estimated at from six or seven to fifteen or twenty persons, that the plaintiff had given him the bill which he held in his hand, and which he again alleged was counterfeit, the discussion assuming the form of an excited altercation, and being conducted with rather loud voice and angry manner on both sides, and some harsh language being, eventually, used by the plaintiff.
On the Monday, following, it appears that the defendant ascertained that the bill, which he had taken to be a counterfeit was, in point of fact, a good bill; but the record is barren of evidence tending to show that he made any effort to correct the erroneous impression which his previous statement might have made. When this suit was filed, his answer, as has been stated, was a general denial; and upon the trial, he undertook to maintain, by his evidence, that he never charged the plaintiff with having passed on him a counterfeit bill.'
*1372 His testimony upon this point is, however, contradicted by that of several witnesses, and is without affirmative corroboration; in fact, is inconsistent with itself and with his course of conduct. Upon the other hand, the statement made by him, when he and the plaintiff reached Rabasa’s place of business, imported that the plaintiff had substituted a bad bill of his own for the silver which Rabasa had given him. Thus, we find in his narrative, on direct examination, the following, to-wit:
“ He said, I gave you five silver dollars, and he said, I will go to Jack “ Rabasa’s and prove it to you; so he took his hat, and we came then “to Jack Rabasa’s; and he called out Jack Rabasa, and said, ‘What “ kind of money did you give me ?’ lie said, ‘five silver dollars’. I “ said, I don’t care what you gave him, I will swear that he gave me a “ five dollar bill.”
Other witnesses testify that the defendant added, that the bill given to him by the plaintiff, and which he held in his hand, was a counterfeit. íhe evidence, therefore, fails to sustain the defense, in so far as the latter consists of a denial that the defendant used language to the effect that the plaintiff had passed a counterfeit bill on him; and it equally fails, in so far as the answer is to be construed as a denial that the language used was Intended to make the charge in an offensive or injurious sense. There is no doubt that the defendant believed that a counterfeit bill had been passed upon him, and that the plaintiff was the person who had passed it; and he acted promptly, vigorously, and persistently, upon the basis of that conviction, and also, in the belief, apparently, that the plaintiff had acted knowingly and from a bad motive. It turned out that he was entirely mistaken; that no counterfeit bill had been passed upon him; and that the plaintiff had given him no bill, good or bad, but had given him the five silver dollars, which he, the plaintiff, had received from Rabasa. In the meanwhile, the defendant had inflicted an injury, upon the plaintiff which he has never repaired, nor attempted to repair, so far as appears from this record.
The evidence as to the precise extent of that injury, measured in dollars and cents, is necessarily indefinite. The witnesses who were interrogated upon th$ subject, testify that the plaintiff is a boy of good character, and several of them who have known him all his life, state that the charge did not affect their opinion of him, because they did not believe it to be true. From which it is argued that no damages ought to be awarded for the alleged injury -to character and business prospects.
*1373 Opinion.
Objections were made, during the trial, by plaintiff’s counsel, to certain testimony, upon the ground, that the defendant, having pleaded a general denial, is precluded from justifying or extenuating the charge, which he thus denies having made. The proposition, as stated, is, no doubt, sound, in the abstract, but we find it inapplicable in this case, for the reason that the defendant endeavored, by .means of the testimony objected to, to sustain his denial that he had used the injurious language imputed to him, and to show that the language which he did use, amounted, substantially, to a harmless statement, to the effect that he had received a bill, which appeared 'to be counterfeit; that he was under the impression that it might have been given to him by the plaintiff; that his purpose was to inquire of the plaintiff whether that was the case, rather than to charge it as a fact; and that it was not intended to inflict injury, and was not likely to have had that effect. From this point of view, we think that the testimony was properly admitted, since even a statement that one has passed a counterfeit bill upon another may be made without either the intention or the' effe.ct of inflicting injury, as there is no imputation of crime or wrong doing, necessarily, involved; and it is only where the language used, taken in connection with the surrounding circumstances, conveys the idea that the person who passed the bill did so knowingly and with the intent to defraud that it becomes injurious or slanderous.
In the instant case, the surrounding circumstances, and more particularly, the additional language used by the defendant, to the effect that the plaintiff was no gentleman; that the defendant did not think that he would have done such a thing, or played a trick of that kind; that, no matter what money the plaintiff had received, he had given the defendant a five dollar bill, which was counterfeit, taken in connection with defendant’s insistence upon, and reiteration of, the charge, leaves no doubt that he intended to make it, and did make it, seriously.
This being the case, and in view of the fact that the defendant was grossly mistaken in the whole matter, and closed his mind to all evidence tending to show that he was mistaken, .whatever may be said with regard to the existence of particular malice, or spite, or with regard to the necessity of proving such malice, the law implies that kind of malice, which means, and is expressed by, a grossly negligent, or wanton, disregard of the rights of others. And, whilst evidence as to *1374 actual malice, and as to special or specific injury wa.s admissible, it is not essential to recovery. Cauchoix vs. Dupuy et als., 3 La., 208; Tresca vs. Maddox, 11 Ann., 206; Perret vs. N. O. Times, 25 Ann., 170; Staub vs. Vanbenthuysen, 36 Ann., 467; Williams vs. McManus, 38 Ann., 161; Sportorno vs. Fourichon, 40 Ann., 423; Weil vs. Israel, 42 Ann., 955; Savoie vs. Scanlan, 43 Ann., 967; Warner vs. Clark & Co., 45 Ann., 863; Taylor vs. Ellington, 46 Ann., 371; Tarleton vs. Lagarde, 46 Ann., 1368; Wimbish vs. Hamilton, 47 Ann., 254; Fellman vs. Dreyfous, 47 Ann., 907; Harris vs. Minevielle, 48 Ann., 908; Poissenot vs. Reuther, 51 Ann., 965.
The verdict and judgment in favor of the plaintiff for one dollar is worse than inadequate, it is equivocal. It is a verdict which might possibly have been rendered in favor of' one whose character was so bad, and who had become so hardened and callous, as to be practically beyond the reach of defamatory language,, but who, nevertheless, was, technically, entitled to a judgment.
It is, therefore, ordered, adjudged and decreed that the verdict and judgment, appealed from, be amended by increasing the same from one dollar to three hundred dollars, the defendant to pay all costs.