142 So.2d 462 (1962)
MILLER, SMITH AND CHAMPAGNE et al., Plaintiffs-Respondents,
v.
CAPITAL CITY PRESS et al., Defendants-Relators.
No. 5612.
Court of Appeal of Louisiana, First Circuit.
May 21, 1962.
Certiorari Denied June 29, 1962.
*463 Taylor, Porter, Brooks, Fuller & Phillips, by Frank W. Middleton, Jr., and Frank M. Coates, Jr., Baton Rouge, for defendant-relator.
Dodd, Hirsch, Barker, Avant & Wall, by John L. Avant, Baton Rouge, for plaintiff-respondent.
Before ELLIS, HERGET, and MILLER, JJ.
*464 ELLIS, Judge.
This matter is before the court as a result of a writ of certiorari having been granted on December 13, 1961 in order that we might have the benefit of the entire record in the case which all counsel agreed was necessary in order that we might fully understand the factual background which they believed would be of material assistance in resolving the issues before the court.
This is a libel action for damages allegedly suffered by plaintiffs, the architectural firm of Miller, Smith and Champagne, and the individual members of said firm, based upon the publication by the Capital City Press of an article in the State Times newspaper of August 26, 1960. Originally there were several defendants to the lawsuit but the suit against all others except Capital City Press was dismissed on exception of venue and improper cumulation of actions.
Sometime prior to August 26, 1960 the East Baton Rouge Parish School Board let a contract for the construction of the Lee Junior-Senior High School in the City of Baton Rouge, and the architectural and engineering services for this project were performed by plaintiffs under a contract with the school board of East Baton Rouge Parish. The general contractor in charge of construction was Ross E. Cox.
It is admitted and shown that portions of the school were damaged as the result of having been subjected to flooding, and that in March or April of 1960, the gymnasium floor was extensively damaged as the result of a rupture of a hot water line which had been installed by Bernhard Plumbing Company, sub-contractor under the general contractor, Ross E. Cox, beneath the floor. Hartford Accident and Indemnity Company as the liability insurer of Bernhard Plumbing Company obtained an engineering report from the firm of Dawson, Gilbert and Pilcher for the purpose of ascertaining the cause of the rupture of the hot water line. However, prior to obtaining the above report, the Hartford Accident and Indemnity Company obtained a report from Shilstone Testing Laboratory for the same purpose.
Mrs. Martha Wilson, a reporter for the Capital City Press, learned of the existence of the Dawson, Gilbert and Pilcher report and contacted Mr. J. R. Gilbert to inquire as to its contents, but was advised by Mr. Gilbert that he had prepared the report for a client, and that it was confidential and he could not release information in the report to her without violating his professional ethics.
On the date of August 26, 1960, Mrs. Wilson, in collaboration with Mrs. Donna Mulhearn Lynch, wrote an article pertaining to the flooding at the Lee High School and we quote that portion pertinent to the issue involved:
"James R. Gilbert of Dawson, Gilbert & Pilcher confirmed to the State Times that the engineers had prepared a report for Hartford Indemnity Co. but, said Gilbert `our professional ethics won't permit us to reveal the contents.' An absolutely reliable source, however, released the following information from the report to the State Times:
"1. The beam walls of the symnasium go at least 2½ feet into the ground on either side of the gymnasium floor. the (sic) there is no underground drainage system permitting water to drain of in the event of pipes bursting because of overheating, a hard freeze, or accident. Any water released under the floor is trapped by the beam walls going into the ground and has no place to go but to rise into the flooring. Soil borings made right outside the gym walls right after the pipe exploded revealed that the ground outside was perfectly dry, the report states, indicating that there is no way for water under the floor to drain off.

*465 "2. There is no provision in the design for the expansion and contraction of water lines under the floor, the report continues. The design did not call for placing the pipes in conduits which would have permitted their being pulled out, repaired and returned without ripping up the floor."[1]
As can be seen, Mrs. Wilson purportedly quoted from "an absolutely reliable source" information given her as to the contents of the report. The article was headlined "Lee High Design Faulty; Floor Flooding Possible Says Engineers' Report."
Plaintiffs filed this suit contending that Mrs. Wilson's article was libelous and the publication had damaged them extensively in that it falsely and untruthfully reflects upon their professional competence and their personal integrity.
On August 2, 1960 plaintiffs, who were defendants in a suit by the contractor entitled "Ross E. Cox v. East Baton Rouge Parish School Board" No. 76,883 on the docket of the 19th Judicial District Court, which concerned the responsibility for damages arising out of certain alleged defects in the construction of the Lee High School, took the deposition of Mrs. Martha Wilson and at that time she refused to reveal the name of her informant.
On September 7, 1961, Mrs. Wilson was subpoenaed by the plaintiff to testify at a discovery deposition for the alleged purpose of discovering information relevant to the suit against the Capital City Press and the other defendants who were then in the suit. Counsel for plaintiffs referred to the above quoted portion of the article of August 26, 1960 which appeared in the State Times newspaper and asked Mrs. Wilson to reveal the identity of her informant, which she again refused to do.
On October 17, 1961 Mrs. Wilson was ruled into the Eighteenth Judicial District Court on an order to show cause why she should not be ordered "to disclose the identity of an anonymous informant referred to in the newspaper article which is the subject of this suit."
The rule was made returnable on November 3, 1961, answer was filed and on the return day the rule was duly heard and Mrs. Martha Wilson again refused to reveal the identity of her informer, whereupon the District Judge made the rule absolute and ordered Mrs. Wilson to answer the question. Notice was given by counsel that an application for writs would be filed in this court and the District Judge fixed the time limit of ten days for the filing of the application and ordered a stay of proceedings pending the application.
The scope of examination of a witness in a pre-trial deposition is set forth in Article 1436 of the LSA-Code of Civil Procedure and we quote the pertinent parts which read as follows:
"A party may take the testimony of any person, including a party, by deposition upon oral examination * * * for the purpose of discovery or for use as evidence in the action or for both purposes * * *. Unless otherwise ordered by the court as provided by Article 1452 or 1454, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * * including * * * the identity and locations of persons having knowledge of relevant facts. It is not grounds for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."
It is conceded that Mrs. Martha Wilson has no privilege. However, it is contended that the identity of a confidential informer *466 would not itself be relevant evidence and, second, that it would not be reasonably calculated to lead to admissible evidence, and also that the question as to whether the plaintiffs have been libelled is to be decided from the contents of the alleged libelous publication.
We are concerned with the issues that may arise on the merits, the proof necessary to sustain the cause of action (libel) and damages therefor, as well as defenses to the action and proof in rebuttal.
In relation to the issues, proof and defenses thereto, we are called upon to decide whether defendant's informant might have knowledge of facts relevant to the demands, or defense, of plaintiffs or defendants, and, if so, his identity and location must be given by the witness as such information (testimony) would appear reasonably calculated to lead to the discovery of admissible evidence.
The constitutional right of liberty of speech and press is set forth in our State Constitution in Article 1, § 3, LSA, which reads as follows:
"Liberty of speech and press; responsibility for abuse
"Section 3. No law shall ever be passed to curtail or restrain the liberty of speech or of the press; any person may speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty."
Under Article 19, § 9, of our Louisiana Constitution we also find a provision as to libel and its defense as follows:
"Libel * * *
"Section 9. In all proceedings or indictments for libel the truth thereof may be given in evidence. * * *"
Although the present suit was filed against Hartford Accident and Indemnity Company, Otto Engleman, Harold Lane Thompson, Ross E. Cox, Martha Wilson, and Donna Mulhearn Lynch, plaintiff's suit was dismissed as to all defendants except Capital City Press, upon exceptions of improper venue, improper joinder of parties and improper cumulation of actions.
The defendant in a libel suit may plead truth as a defense but if the publication is found to be false, legal malice is implied and the plaintiff is entitled to damages. In one of the earlier cases, Weil v. Israel, 42 La.Ann. 955, 8 So. 826, in which plaintiff had brought an action of libel against the defendant for alleged false and libelous allegations in the latter's answer to suit by the plaintiff and the defendant offered as a defense justification, that the allegations of his answer and of his motion for new trial were true and made in good faith and without malice, the Supreme Court of Louisiana stated at 8 So. Page 828:
"* * * The law of libel and slander, as applicable to publications such as the one under consideration, is carefully stated in Staub v. Van Benthuysen, 36 La.Ann. 467, from which we make the following extracts, viz.: `A libel is any publication, whether in writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned, or which has a tendency to injure him in his occupation. (Our italics.) Odgers, Sland. & L. 7, 20.' Again, the word `malice,' when used in a civil or criminal pleading, in cases of this kind does not imply, much less mean, ill will, or personal malice. Its legal sense is a wrongful act, done without just cause or excuse. Malice is an imputation of the law from the false and injurious nature of the charge, and differs from actual malice or ill will, which latter may be proved to enhance the damages. Legal malice need not be proved. The law imputes it to the publisher of a libel from the act of publication. Any publication which is false and defamatory subjects the publisher to damages in *467 favor of the party aggrieved; printed or written slander being justly considered more pernicious than verbal. * * *".
In Alloway v. Fitzgerald, 158 La. 54, 103 So. 440. The Supreme Court of Louisiana held:
"When proof of the truth negatives the charge there is no slander. Rayne v. Taylor, 14 La.Ann. 406; Perret v. New Orleans Times [Newspaper], 25 La.Ann. 170; Cade v. Redditt, 15 La. Ann. 492.
"In this record there is no proof or suggestion of malice. If the defendant was not actuated by malice and the truth of his utterances are established, plaintiff cannot recover. Hauk v. Nicholson, 36 La.Ann. 986; Clement v. [Their] Creditors, 37 La.Ann. 692."
In Billet v. Times-Democrat Pub. Co., 107 La. 751, 32 So. 17, 58 L.R.A. 62, in considering a defense of truth of an alleged statement by a detective to a representative of the defendants which it had published and which formed the basis of the suit for libel the Court held:
"The original answer rested the defense solely on the ground that the publication was privileged, and the evidence should have been confined to the question of privilege vel non, save in so far as it may have been admissible in mitigation of damages. The supplemental answer affirmed the truth of the statement published, and thus presents an additional defense, and introduces a new issue. But the defense thus presented is not inconsistent with the original defense, and there is no change of issue in the sense of substituting one issue for another. Under the circumstances, and as the amendment was offered before the case was put on trial, we are not prepared to say that it was improperly allowed. Code Prac. Art. 420. The justification set up in the supplemental answer has not, however, been sustained by the evidence. `In giving currency to libelous or slanderous reports and publications, a party is as much responsible, civilly and criminally, as if he had originated the defamation.' Staub v. Van Benthuysen, 36 La.Ann. 467. `Tale bearers are as bad as tale makers.' Harris v. Minvielle, 48 La.Ann. 908, 19 South. 925. In undertaking, therefore, to justify by proving the truth of the facts stated, the defendant not only assumed the burden of proving that the detectives made the statement attributed to them, but of proving that those statements were true. * * *." (Emphasis added.)
Applying the emphasized portion of the above quote to the case at bar, and assuming that the defendant pleads truth as a defense,[2] in accordance with the holding of the Supreme Court the defendants in undertaking to justify, by proving the truth of the facts stated, which are alleged to be libelous and form the basis of the suit, not only assume the burden of proving that the informant made the statement attributed to *468 him, but of proving that those statements were the truth. If this be correct the name and identity of the informant would be reasonably calculated to lead to the discovery of admissible evidence. Should the defendants fail to prove the truth of the alleged libelous statement, proof that the informant was "an absolutely reliable source" would be admissible in mitigation of damages. But, more important, if the defendants in pleading truth are burdened with proving that the informant made the statement attributed to him, the plaintiffs would be entitled to cross examine the informant who might deny being the informant, or who, in admitting that he was the informant, might deny that he gave such a statement represented as being the truth but only represented as being based upon hearsay. Or if the informant were to testify that he made such a statement, all evidence as to how, where and when he acquired the information allegedly given to the relator would be admissible, in order to test his credibility and possibly lead to other evidence to corroborate or disprove such testimony. There can be no doubt that the identity of the informant could be calculated to lead to admissible evidence which would establish him as "an absolutely reliable source" or an unreliable source, and if the latter be established and the defendants should have known or could, by proper investigation, have established his unreliability prior to the publication, such evidence would either mitigate or enhance the damages, and, of course, damages are one of the material issues in the case.
Plaintiffs in oral argument and brief further contend that in view of the fact that the person who authored the report and others who allegedly had access thereto, had by deposition in the related suit of Cox versus the plaintiffs by way of answers upon deposition and discovery denied having given any information on the report or discussed it or made the statements attributed to the informant of relator, that these same parties would in all probability be witnesses and might be among those attempting to prove the truthfulness of the alleged libelous statement and if now named as the relator's informant it would materially affect their credibility. Counsel for defendants argue that such a witness could not be impeached on a collateral issue, citing State v. Washington, 225 La. 1021, 74 So.2d 200; State v. Cox, 136 La. 1008, 68 So. 107, and Lorentz v. Thiesen, 140 La. 663, 73 So. 717.
We do not believe that the cases cited are apposite as they involved the admissibility of testimony on the actual trial of the case where the issues were definite, whereas we are concerned with the scope of examination and cross examination under Louisiana Civil Code of Procedure Article 1436 "for the purpose of discovery or for use as evidence in the action or for both purposes," and it is not grounds for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. The identity of the informant will supply a witness with knowledge affecting material issues on the trial of the case. His credibility will be open to attack and if he has sworn under oath on his deposition that he was not the informant, this might materially affect his credibility as to his testimony with regard to the facts published in the alleged libelous article. His motive for denying under oath that he was the informant referred to in the publication "as an absolutely reliable source" would be relevant and admissible evidence which might affect his credibility, as well as the outcome of the case on the merits. Finally, we believe plaintiffs are entitled to know by way of discovery whether a person who later might be an actual witness on the trial was the informant who denied it under oath when he was questioned under Article 1436, C.C.P.
In answer to plaintiff's contention that there may be no informant and if such be proven it would show malice on the part of Mrs. Wilson, defendants state that it is well settled under Louisiana law that malice *469 is not an issue in a suit for libel, citing Barnhill v. Times-Picayune Pub. Co., 171 La. 286, 131 So. 21. In this case the Supreme Court of Louisiana stated:
"Travis Barnhill and Truly Barnhill were strangers to respondent, and the naming of Travis Barnhill in the article published resulted from the error of confusing the two brothers in the gathering of the news, which was received by respondent as a dispatch from the Associated Press. The news was published by respondent, as it was accepted as correct and came from a reliable source. The facts of the case show a total absence of malice or ill will on the part of respondent in publishing the article in question, and a full correction was made as soon as the error was discovered.
"However, this state of facts does not wholly exonerate respondent from all liability. As said by this court in Vicknair v. Daily States Pub. Co., 153 La. [677] 680, 681, 96 So. 529, 530:
"`Plaintiff may recover compensatory damages, regardless of whether there was any actual malice or not. The malice imputed to a publisher of a libel is not personal ill will, but merely legal malice implied from willfully and wantonly doing an unlawful act which results in injury. Weil v. Israel, 42 La. Ann. [955] 962, 8 So. 826; Covington v. Roberson, 111 La. 326, 35 So. 586; Hall v. Ewing, 140 La. [907] 908, 74 So. 190; Flanagan v. Nicholson Pub. Co., 137 La. 588, 68 So. 964, L.R.A. 1917E, 510, Ann.Cas.1917B, 402.
"`Under the laws of Louisiana, libel is a quasi offense, actionable under the broad provisions of article 2315 of the Civil Code:
"`"Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it."
`"All that is necessary in this state for a party demanding damages from another for a libel is to allege a condition of things such as would show "a fault" on the part of the defendant, resulting in damages and injury to himself therefrom, and on the trial of the case to establish the truth of the allegations. Covington v. Roberson, 111 La. 326, 35 So. 586; Hall v. Ewing, 140 La. [907], 908, 74 So. 190; Spotorno v. Fourichon, 40 La.Ann. [423], 424, 4 So. 71; Warner v. Clark, 45 La. Ann. 863, 13 So. 203, 21 L.R.A. 502.'
"In the case of Upton v. Times-Democrat Publishing Co., 104 La. [141] 144, 28 So. 970, 971, this court said: `For injury resulting from oversight or negligence, even when there is no malice or evil intent, may give rise to liability in damages. A newspaper would yet be liable if an injurious untruth should find its way into its columns, though by the merest accident. The law seeks to protect the innocent who has been injured by libelous reports. The fact that a management may be all that can be expected to guard against unfortunate accidents is not in itself a protection from damages and a sufficient defense.'
"Necessarily, a publisher of a newspaper must collect news through reporters and other agents. If a publisher is not held responsible for the fault or negligence of such agents in gathering news and sending in to the paper libelous reports, then recovery of damages in such cases could not be had, and the law of libel would become a dead letter in this state."
The Barnhill case, supra, in our opinion does not stand for the proposition that malice is never an issue in a suit for libel. This case is completely in accord with a long line of jurisprudence that if the publication is false and libelous per se, malice is imputed and termed "legal malice implied from willfully and wantonly doing an unlawful act which results in injury." The Court evidently considered all the facts in *470 the case for it stated that they showed a total absence of malice or ill will on the part of the respondent, citing and quoting from Upton v. Times-Democrat Pub. Co., supra, which contained a phrase, "even when there is no malice or evil intent."
On the other hand, in State v. Lambert, 188 La. 968, 178 So. 508, the Supreme Court of Louisiana held:
"Under the express terms of the statute, malice is an ingredient of the crime of libel. Without malice there can be no criminal responsibility. The general rule is, that legal malice, which in law means a wrongful act done intentionally, without just or lawful excuse, is sufficient to support a charge that the publication is libelous. And malice is presumed by the publication. But the rule has its limitations in cases of privileged communications. State v. Bienvenu, 36 La.Ann. 378. Where the communication is privileged, malice is not presumed by law. Berot v. Porte, 144 La. 805, 81 So. 323, 3 A.L.R. 1651. In such communications the privilege can only be destroyed by actual malice, legal malice is not sufficient for the purpose.
"Privileged communications are either absolutely privileged or qualifiedly privileged. The qualified privilege exists where the communication complained of is made in good faith on any subject matter in which the party has an interest or in reference to which he has a duty, either legal, moral, or social, if made to a person having a corresponding interest or duty. Oakes v. Walther, 179 La. 365, 154 So. 26.
"The defense of privilege is recognized in criminal as well as civil proceedings for libel or slander. 17 R.C.L. § 223, p. 461.
* * * * * *
"If the privilege is only qualified the onus lies on the plaintiff in a civil suit or on the State in a criminal prosecution of proving actual malice. This may be done either by extrinsic evidence of personal ill feeling or by intrinsic evidence, such as the exaggerated language, the mode and extent of the publication, and other matters in excess of the privilege. Odgers on Libel and Slander, 2d Ed., p. 438.
"An examination of the record discloses that the conviction of defendant was not based on any extrinsic proof that he acted through hatred, ill will, and a malicious design to injure the prosecutrix.
* * * * * *
"The question as to whether a communication is privileged involves questions of fact as well as of law. State v. Whitmire, 166 La. 195, 116 So. 849. Where the facts are not disputed the question of privilege becomes one of law. Odgers on Libel and Slander 2d Ed. § 183, p. 216; Newell on Slander and Libel, 4th Ed., § 345, p. 385.
"The facts in this case do not appear to be disputed. Therefore, the question of privilege is purely one of law, which is reviewable by this Court."
In Leininger v. New Orleans Item Pub. Co., 156 La. 1044, 101 So. 411, at page 412, the Court held:
"A report, by a newspaper of proceedings had at a public meeting of a municipal council, in which proceedings the public has an interest, when the report is a fair and accurate one of the proceedings had, is privileged, even though it contains matter defamatory of another. Newell, Slander and Libel (3d Ed.) § 643, p. 652; Wallis v. Bazet, 34 La.Ann. 131; Meteye v. Times Democrat Pub. Co., 47 La.Ann. 824, 17 South. 314. Reports of such proceedings are privileged in the same manner as are reports of judicial proceedings. Newell, Slander and Libel (3d Ed.) § 652. It is not necessary in reports of judicial proceedings, and hence of the *471 proceedings of municipal councils, `that the report should be verbatim; nor is absolute accuracy essential so long as the report is substantially correct. A few slight accidental errors will not destroy the privilege, provided the whole report, as published, produces materially the same effect on the mind of the reader as an absolutely correct report would have done.' Odgers, Libel and Slander, (5th Ed.) p. 333.
* * * * * *
"It is urged, however, that the publication was prompted by actual malice; and therefore that the defense that the publication was a privileged one is destroyed. We have considered the evidence offered to show malice, but fail to find that it discloses any. * * *"
Again in Edwards v. Derrick, 193 La. 331, 190 So. 571, the Supreme Court, through Chief Justice O'Niell, discussed the law of slander and libel as follows:
"When a person accuses another of an act of dishonesty, and it develops that the accusation is untrue, the accuser is not protected from liability for damages by the fact that he made the accusation upon what he considered reasonable ground to believe the accusation to be true, unless the accusation was a privileged communication.
"The defendant in this case did not plead that the accusations which he made against the sheriff after the sheriff was exonerated were privileged communications. And in fact the accusations were not privileged communications, because they were not made in pursuance of a duty on the part of the defendant. That is demonstrated by the determined way in which the accusations were repeated after the sheriff was exonerated. If one who makes a defamatory accusation is not shielded by its being a privileged communication, it will be no justification or defense that he believed the charge to be true, when in fact it was not true. 36 C.J. p. 1234, § 195, citing decisions rendered in seventeen jurisdictions; Newell on Slander and Libel, 4th Ed., p. 381, § 342.
"Under the guaranty of the liberty of speech a person may go very far in his criticism of the official conduct of public officers, but he must bear in mind that the Bill of Rights itself holds him `responsible for the abuse of that liberty'; and when he attacks the personal character or the honesty of purpose of a public official he must be prepared to prove the truth of his accusation, or suffer the consequences.
"To accuse a person of an act of dishonesty is injurious per se, and implies the kind of malice which consists of a wanton or negligent disregard of the rights of others; and, although evidence of actual malice, and of specific injury, is admissible in an action for damages for such a slander, such evidence is not essential to the right of recovery. Cauchoix v. Dupuy, 3 La. 206, 208; Tresca v. Maddox, 11 La. Ann. 206, 66 Am.Dec. 198; Perret v. New Orleans Times Newspaper, 25 La. Ann. 170; Staub v. Van Benthuysen, 36 La.Ann. 467; Williams v. McManus, 38 La.Ann. 161, 58 Am.Rep. 171; Spotorno v. Fourichon, 40 La.Ann. 423, 4 So. 71; Weil v. Israel, 42 La.Ann. 955, 8 So. 826; Savoie v. Scanlan, 43 La. App. 967, 9 So. 916, 26 Am.St.Rep. 200; Warner v. Clark, 45 La.Ann. 863, 13 So. 203, 21 L.R.A. 502; Taylor v. Ellington, 46 La.Ann. 371, 15 So. 499; Tarleton v. Lagarde, 46 La.Ann. 1368, 16 So. 180, 26 L.R.A. 325, 49 Am.St.Rep. 353; Fellman v. Dreyfous, 47 La.Ann. 907, 17 So. 422; Harris v. Minvielle, 48 La. Ann. 908, 19 So. 925; Fitzpatrick v. Daily States Publishing Co., 48 La.Ann. 1116, 20 So. 173; Mequet v. Silverman, 52 La.Ann. 1369, 27 So. 885."
In the Edwards case, supra, the Court clearly held that "* * * evidence of actual malice, and of specific injury, when *472 admissible in an action for damages for such a slander, such evidence is not essential to a right of recovery." The other cases which we have cited and quoted from above specifically hold that actual malice will destroy the qualified privilege and therefore such evidence would be admissible for that purpose and if proven, would have ordinarily increased the amount of damage.[3]
In the case of Sanders v. Times Picayune Pub. Co., 168 La. 1125, 123 So. 804, the Supreme Court of Louisiana specifically examined the record for proof of any actual malice. This was a suit for damages resulting from an alleged libelous and defamatory publication. The defendant admitted the publication, denied that it constituted a libel, and alleged good faith and want of malice, and that plaintiff had suffered no damage. The Court found:
"Nor do we find from the record any actual malice on the part of those connected with the newspaper who were responsible for writing and publishing the story.
"Of course, where a publication is false and libelous on its face, actual malice or ill will is not required to be established. The law in such a case implies malice. This legal proposition will hardly be questioned.
* * * * * *
"Having reached the conclusion that the publication was not made from any evil or vindictive motive, we come directly to the question as to whether the publication as a matter of law amounts to a libel.
* * * * * *
"Here an accusation, false and unfounded, had been originated in the parish of Tangipahoa. The story was communicated to the defendant, which gave it publicity, and while we exonerate the defendant from any improper motive, we must hold that the defendant, who was undoubtedly imposed upon, did not exercise that care and caution which it should have done to ascertain whether the report was true or not.
"The story as communicated to the defendant was of such a nature and character as to demand in inquiry as to its truth or falsity before vending it to the public."
The Court also considered in the last cited case that from the facts the defendant had not exercised "that care and caution which it should have done to ascertain whether the report was true or not. * * *" and the story itself as communicated to the defendant "was of such a nature and character as to demand an inquiry as to its truth or falsity before vending it to the public."
Therefore, actual malice could be an issue in the case at bar and also the question of whether the defendant had exercised the proper care and caution in order to ascertain whether the report from its informant was true or not, and whether the story as told to the defendant by the informant was of such a nature and character as to demand in inquiry as to its truth or falsity before vending it to the public.
If actual malice becomes an issue in the case, the identity of the informant could reasonably be calculated to lead to admissible evidence which would tend to prove or disprove the charge of actual malice. Furthermore, it would be impossible for the lower court to say whether the defendant had exercised the care and caution to have ascertained whether the report was true or not or whether the report communicated by the informant to the defendant was of such a nature and character as to demand an inquiry as to its truth or falsity before vending *473 it to the public, without the actual testimony of the informant himself. The plaintiffs are not legally bound to accept only the testimony of the defendant on these points, but are entitled to the benefit of the testimony of all witnesses who might reasonably be calculated to have knowledge of admissible testimony, and we believe that the informant has knowledge of such facts as would constitute admissible testimony and, therefore, his identity and location under the express provisions of the law must be furnished to the plaintiffs in answer to the question propounded.
Another special plea available to the defendant in this libel suit is the qualified privilege of fair comment and criticism. In the case of Martin v. Markley, 202 La. 291, 11 So.2d 593, the Supreme Court of Louisiana, in commenting upon the doctrine of qualified privilege stated:
"The next contention of the defendant is that the statements and comments made by her in her letter are privileged communications and that, consequently, the judge was in error in finding that she was responsible to plaintiffs for the damages they allegedly sustained. Defendant's counsel concede, in their oral argument and in brief that the alleged privilege enjoyed by the defendant was not absolute, but of a qualified nature. But, relying upon the well-recognized doctrine of qualified privilege which permits newspapers and the public generally to engage in free discussion of the manner in which public officers discharge their duties and to make fair criticism of, and comment on, their official acts, counsel maintains that the letter is not libelous because it falls squarely within the category of the privilege to which defendant was entitled under the law. In support of this proposition many authorities are cited by counsel, including Addington v. Times Publishing Co., 138 La. 731, 70 So. 784; Egan v. Signal Publishing Co., 140 La. 1069, 74 So. 556; Hall v. Ewing, 140 La. 907, 74 So. 190; Flanagan v. Nicholson Publishing Co., 137 La. 588, 68 So. 964, L.R.A. 1918E, 510; * * * Law of Journalism, Jones, 1940 Ed., Sections 36 and 37, page 101; The Law of Libel & Slander by Seelman, Section 284(a), page 238; Newell on Libel & Slander, 4th Ed., Section 421, page 445, and 36 Corpus Juris, Section 281, page 1280.
"All of the foregoing authorities recognize the doctrine of qualified privilege respecting fair comment and criticism of public officers and men in public life. We do not question the soundness of the doctrine. However, counsel for defendant have overlooked the principle upon which the rule of fair comment is founded. The defendant undoubtedly enjoyed the right, as a citizen, to criticize the conduct of the plaintiffs respecting the manner in which they discharged their duties, providing the comments were based upon a true or an admitted state of facts. But the privilege does not extend to the publication of false statements of fact concerning public officers. See Cadro v. Plaquemines Gazette, Inc., et al., La.Sup., [202 La. 1] 11 So.2d 10. The right accorded extends only to fair comment, but not to falsity in the assertion of facts. In the instant case, the comment made by the defendant, that the acts of the plaintiffs in connection with the killing of Nace Harris are `a blot on law and justice,' is fully justified provided that the facts upon which the conclusion is founded are true. But since the facts stated in defendant's letter, that, as an eye witness to the tragedy, she saw the fatal shot fired while Nace Harris was in a helpless state and had assumed an attitude of surrender, are defamatory per se, the burden rested upon her to prove to the satisfaction of the court the truth of these facts in order for her to claim the asserted privilege of fair comment.

*474 "In Law of Journalism by R. W. Jones, page 99, paragraph 35, it is stated:
"`Fair Comment and Criticism. The second defense to be discussed, fair comment and criticism, is one that is closely akin to truth, for, manifestly, no untruth can be the basis of fair criticism. The expression of an opinion which carries with it the imputation of wrongdoing is as much libelous as a direct charge of wrongdoing.
"`The statements of fact commented on must be true if the defense of fair comment and criticism is to be available.
"`Anything of public interest and importance may be fairly commented on and fairly criticized. The comment and criticism may be adverse, but must be fair. In order to be fair the facts involved must warrant the comment or criticism made, and so truth is involved in the defense.' (Italics ours.)
* * * * * *
"In 36 Corpus Juris, Verbo Libel & Slander, Section 289, page 1283, in discussing the question of false statements of fact with reference to privileged communications, it is declared:
"`But there is a distinction between the ordinary privileged communication and the so-called privilege of fair comment or criticism. What the interest of private citizens in public matters requires is freedom of discussion rather than of statement. What is privileged, if that is the proper term, is the criticism or comment, not the statement of facts on which it is based. Generally speaking, comment or criticism must be founded on truth. While ordinarily it does not consist of the assertion of facts, an allegation of fact may be justified by its being an inference from other facts truly stated. The right to comment or criticize does not extend to, or justify, allegations of fact of a defamatory character.' (Italics ours.)"
Therefore, if the qualified privilege of fair comment and criticism is specially plead it becomes material for the defendant to prove the statements of facts as true upon which the fair comment and criticism are allegedly based, for it is the criticism or comment that is privileged and not the statement of facts upon which it is based, and therefore the latter must be proved before the defendant can enjoy the legal benefits of the former.
Another late case with an excellent discussion of the law of libel is Kennedy v. Item Co., 213 La. 347, 34 So.2d 886. In discussing the right of freedom of speech and of the press and the prohibition restraining Congress from making any law abridging that freedom the Court stated:
"But in securing to themselves this unqualified right, they never intended to place those exercising it wholly beyond the reach of the law and unaccountable for the abuse of the privilege. As was so aptly pointed out by Justice Kent of New York in the celebrated case of People v. Croswell, 3 Johns. Cas. 337, at page 393, decided in 1804, `The founders of our governments were too wise and too just, ever to have intended, by the freedom of the press, a right to circulate falsehood as well as truth, or that the press should be the lawful vehicle of malicious defamation, or an engine for evil and designing men, to cherish, for mischievous purposes, sedition, irreligion, and impurity. Such an abuse of the press would be incompatible with the existence and good order of civil society.' In this same opinion the organ of the court accepted as correct and accurate General Alexander Hamilton's definition `that liberty of the press consists in the right to publish, with impunity, truth, with good motives, and for justifiable ends, whether it respects government, *475 magistracy, or individuals.' * * * (Italics ours.)"
The special plea of privilege of fair comment and criticism was made by the defendant. The Supreme Court in differing with the interpretation as to the holding in the case of Flanagan v. Nicholson Pub. Co., 137 La. 588, 68 So. 964, L.R.A.1917E, 510, discussed the plea of fair comment and criticism and reaffirmed the holding in the Markley case, supra, to the effect that "the right accorded extends only to fair comment, but not to falsity in the assertion of facts." The Court further stated that the generally accepted rule recognized by all the leading American and English authorities is to the effect that "every person has a right to comment on matters of public interest and general concern, provided he does so fairly and with an honest purpose." (Emphasis added.)
Therefore, the defendant, if it pleads qualified privilege resulting from fair comment and criticism, must prove the truth of the statement of facts upon which it claims fair comment and criticism, and also that it was done fairly and with an honest purpose.
To prove the truth of the facts upon which the alleged fair comment and criticism were based and that such comments were done fairly and with an honest purpose would require extrinsic evidence. The plaintiffs do not have to accept without refutation the testimony of the defendant or its witnesses that the alleged libelous statement was obtained from "an absolutely reliable source" nor that the statement of facts allegedly given them by such source were true, or the manner and circumstances surrounding the giving of such facts, but is entitled to testimony of all witnesses who might be calculated to have knowledge of facts which would be admissible in evidence to refute or disprove the testimony offered by the defendants on this plea. At least we are of the opinion that the plaintiffs are entitled under the Code of Civil Procedure Article 1436 to be given the names of all such unknown witnesses, including the identity and location of the alleged informant in this case. His testimony as to his version of what he told the agents of the defendants and the facts and circumstances surrounding such statements, the corroboration or refutation of the defendants testimony under this plea could be reasonably calculated to affect the credibility of the defendants' agents, and in any event, such testimony would be relevant and admissible. The plaintiffs are entitled to the identity of the informant for it can be reasonably calculated to lead to the discovery of admissible evidence and he is a person "having knowledge of relevant facts."
In the Kennedy case, supra, the organ of the court in discussing damages stated:
"While it is true, as pointed out by the defendant, that nominal damages only are given in many cases, in these cases the court found that the publication was made in good faith, with good motives, for justifiable ends, and with no malice or ill will toward the victim. Where these things have not been found to be true, the awards have been much more than mere nominal damages. * * *"
We have heretofore discussed the testimony in mitigation of damages or that might enhance the damages and that the identity of the informant and the availability of his testimony could be reasonably calculated to lead to admissible evidence, either to mitigate or enhance. Applying the holding of the court quoted above that only nominal damages are awarded in those cases where the court found that the publication was made in good faith, with good motives, for justifiable ends, and with no malice or ill will toward the victim, it is clear that testimony which would tend to prove or disprove that the publication in question was made in good faith, good motives, justifiable ends and the absence of ill will toward the plaintiffs would be admissible on the question of the amount of the damages. The question to be decided is whether the *476 informant could be reasonably calculated to have knowledge of facts admissible to prove or disprove the requirements or essentials laid down by the Supreme Court for an award of nominal damages, or which would enhance the damages. We believe the answer must be in the affirmative.
The case of Waldo v. Morrison, 220 La. 1006, 58 So.2d 210, 32 A.L.R.2d 419, reaffirmed the general principles laid down in the Kennedy case. In this case the Court, in discussing the plea of "fair comment" stated:
"We have had numerous actions of this type in the history of our jurisprudence. While there was a conflict in the earlier cases, the rule has been settled since, Lescale v. Joseph Schwartz Co., 116 La. 293, 40 So. 708, that the common-law rule of absolute privilege has no place in the law of Louisiana; the privilege is, rather, qualified, and is subject to the rule that the comment made must be material, with probable cause and without malice. When the Lescale case finally came before this court on the merits, 118 La. 718, 43 So. 385, we found that the allegations had been made in good faith, and on the `most ample probable cause.' To the same effect, see: Dunn v. Southern Ins. Co., 116 La. 431, 40 So. 786; Marks v. National Fire Ins. Co., 129 La. 904, 57 So. 168; Glisson v. Biggio, 139 La. 23, 71 So. 204, on exceptions, 141 La. 209, 74 So. 907, on merits.
"The standard to be applied in determining materiality is announced in the Lescale case as follows: `In the philosophical sense an untrue allegation cannot be material, but in the legal sense it can; since, for the purposes of the argument, it is assumed to be true, the question is as to whether it would be material if true. * * * The fact is that, in the nature of things, the question of privilege could not arise in connection with a true allegation. It can arise only in connection with one that is false. In the instant case the allegations against plaintiff, if true, would have been material * * *.' 116 La. 293, 295, 296, 40 So. 708, 709.
"The existence of probable cause is the second requisite for invoking the doctrine of qualified privilege. That it is essential, and a sine qua non for the defense to an action for libel is amply illustrated in the case of Sabine Tram Co. v. Jurgens, 143 La. 1092, 1094, 1095, 79 So. 872, 873, where we permitted recovery because of a lack of probable cause:
"`The charges of fraud were essentially injurious to appellant, and having been found to be untrue, were libelous. The appellee had employed an expert accountant to audit the books * * * and had his report disclosing the facts pertaining to the transactions on which the charges of fraud were made against appellant. Hence there was not probable cause for appellee to believe to be true the allegations which have been adjudged false.
"`* * * No one has a right to deem appropriate or pertinent to an issue presented for decision in a judicial proceeding a libelous allegation that he knows is false or that he has not just or probable cause to believe is true.'
"* * * In Gosserand v. Gumbel, 154 La. 537, 97 So. 852, defendant (plaintiff in a suit to annul a tax sale) was absolved from responsibility for averments made in the pleadings prepared therein by his attorney, where it developed that they had been made in good faith:
"`Whether or not a litigant has probable cause for the averments of his judicial pleadings does not depend merely upon the actual state of the case, but upon his honest belief in making said averments. He may be mistaken, but if he has reasonable grounds for believing the truth of the allegations, and is not *477 actuated by malice and ill will, no damages are recoverable.'"
The same law and rule applies to the alleged publication in the case at bar, "that the comment must be material, with probable cause and without malice." Again we are of the opinion that the identity of the informant can reasonably be calculated to lead to admissible evidence on the question of probable cause and lack of malice
Also see Madison v. Bolton, 234 La. 997, 102 So.2d 443; Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222; Oakes v. Alexander, La.App., 135 So.2d 513.
Both counsel have cited and furnished a copy of the opinion of the Supreme Court of Hawaii in the recent case of In re Appeal of Goodfader, Hawaii, 367 P.2d 472. The court in that case in a most lengthy opinion which fully discussed the question of whether a newspaper reporter should be compelled to name his informant by a full and complete discussion of the basis and importance of maintaining freedom of the press, with which we all agree, held that the identity of the informant was of material importance to the person seeking such information on discovery and that the reporter must answer and give the identity of such informant. Counsel for the defendant states in his brief that the Hawaii case "clearly holds that reporters should not be compelled to reveal their sources, unless the identity of such source is shown to be of material importance to the person seeking such information." We believe that we have heretofore shown that the identity of the informant in the case at bar would be of material importance to the plaintiff as this person could reasonably be calculated to be in possession or have knowledge of facts which would lead to admissible testimony on the material issues in this suit, and is the only person other than the defendant's agent who could testify to all the facts and circumstances surrounding the background which form the basis of the publication.
For the reasons herein stated the ruling of the District Court is correct and the writ is hereby recalled, set aside and annulled and the record is hereby ordered returned to the District Court and the case be proceeded with in accordance with law.
Writ recalled and set aside, and case remanded.
NOTES
[1] The article contained other statements which the plaintiffs specifically alleged in their suit were also libelous, however, for the purpose of the question now before the court it is not necessary that we detail these other alleged libelous statements.
[2] We are concerned with a discovery deposition and the right of the plaintiffs to have the relator, Mrs. Martha Wilson, name her informant, referred to in the alleged libelous article as "an absolutely reliable source" under Article 1436 of the Code of Civil Procedure on the ground that such information is relevant to the subject matter involved in the pending action (libel) "whether it relates to the demand or defense of the examining party or to the demand or defense of any other party, including * * * the identity and locations of persons having knowledge of relevant facts * * *" if the identity of the alleged informant "appears reasonably calculated to lead to the discovery of admissible evidence." As the demand is definitelibelbut the defenses are not fixed at this time, we must examine all of the defenses which could be made under the law to the main demand of the plaintiff, as well as admissible evidence which might rebut or disprove the defenses that might be relied upon by the defendants.
[3] We recognize and realize that punitive damages are not recoverable in the State of Louisiana, however, throughout the entire jurisprudence as to liable or slander our courts have recognized that damages are enhanced where actual malice has been proven.