## No. 12,400.

### EMANUEL J. BAYSSET VS. GEORGE M. HIRE.

The legal and moral duty due by the parent to his daughter, and the solicitude by which he should always be prompted for ·her future, give rise to a " qualified privilege," on occasions, he thinks, his advice and admonition are required.

The tie between father and daughter, and the usual sympathy among the friends of both (to whom the report against the plaintiff who sought her hand was repeated) is such that the truth of the report was not the issue, but whether the father honestly believed it to be true.

The utterances of the father on such an occasion are not actionable merely because not true, but express malice must be shown.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

*Clegg & Quintero* for Plaintiff, Appellant.

*B. B. Howard* for Defendant, Appellee.

Argued and submitted March 29, 1897.
Opinion handed down April 12, 1897.
Rehearing refused May 10, 1897.

The opinion of the court was delivered by

BREAUX, J. This suit was brought by the plaintiff to recover damages for slander committed, it is charged, by the defendant. The damages affected his reputation, caused loss in business, wounded his feelings and brought about a severance of the betrothal between himself and defendant's daughter, he, in substance, avers.

The defendant, in his answer, admitted that he had made the statement as alleged by the plaintiff, but he especially denied that the

statement was made in any spirit of malice, revenge or hatred, or that it had, in any manner, damaged the plaintiff. He also averred that he entertained kindly feeling for the plaintiff; that he was paying his address to his daughter, to which he objected; that the statements he made were to friends of the plaintiff in confidence, without intending to injure him, but to convey to him that his visits must cease.

The case was tried before a jury. The verdict was for the defendant.

The vexatious and painful reports against the plaintiff, of which he complains, were of a date long anterior to the date that the defendant made the statements he is charged with having made.

Such reports, if unfounded, are always to be regretted, and those who maliciously and wantonly circulate them are as blamable and censurable as those by whom they were originated.

It remains that the case before us is exceptional. It is the cause of a father who sought to prevent his daughter from receiving the address of the plaintiff—in other words, the plaintiff sought defendant's daughter in marriage. The father, on account of injurious reports against the young man, deemed it proper to interfere.

It is true that rumor with her thousand tongues exaggerates everything. She rejoices in her task of telling alike of facts and fictions; of things done and things not done. Such reports as those circulated in this instance are nearly always disproved with great difficulty. The father owed no duty to the plaintiff, which could possibly prevent him from carrying out a determination prompted by affection and tenderness for his daughter. Reports, such as those made evident by the record, circulated about a caucasian of the purest type, would be enough to influence the conduct and utterances of a prudent parent when considering with the members of his family, or in conversation with close friends, the advisability of his daughter's marriage.

In justice to the plaintiff we deem it proper to state that witnesses of the highest respectability have testified that members of the family against whom the grievous charges were directed were at the time treated and considered as white, and that as such they were admitted in religious and other circles where none but white persons were admitted. It was plaintiff's misfortune that there were adverse reports about him. In view of the occasion and exigency, the ques-

tion was whether the father, who is now the defendant, honestly believed the report to be true. In our judgment, whether the rumor was true or even whether the defendant had reasonable grounds to believe these reports, are not essentials to free him from the reproach of being a defamer, if he *believed* the report to be true.

In our view the occasion was one of qualified privilege, and the purpose of the defendant was to prevent a threatening injury, and not for the purpose of slandering. The disclosure made by him to the plaintiff was made *bona fide*, and the utterances while conversing with intimate friends do not disclose the least malice. We have before stated the occasion was one of qualified privilege. In that case, to sustain his action, the plaintiff must show actual malice. The *onus* is with him. We think the plaintiff has failed in his attempt to prove malice. Without this proof, if the defendant honestly believed the report true, he can not be held in damages.

We believe, as substantially urged by counsel for the plaintiff, that the pleadings on the part of the defendant were stronger than the occasion required. But the answer and the evidence were considered as a whole by us, and we reached the conclusion that the defendant in his defence had not alleged more than had been reported to him.

Mr. Cooley, in his book on Torts, said: "To require him at his peril to keep strictly within the limits of what he could prove to be true would be to make no allowance for the confidence properly belonging to the relation, or for the agitation and alarm which paternal feelings would naturally experience when an alliance believed to be improper was proposed. The case suggested is one of a large class of cases in which the like privilege is allowed, and in which it is necessary to show not only that the communication was false, but also that it was made with evil intent " (p. 214).

Much must be allowed to the thoughtful father who seeks to guide his children in the right direction. Unless he is reckless and inconsiderate in his statement his utterances are not actionable.

" If fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society, and the law has not restricted the right to make them, within any narrow limits." Baron Parke in Toogood vs. Spying, 4 Ty. and W. 582.

" The privilege is not defeated by the mere fact that the commu-

nication is made in terms that were intemperate or excessive from over-excitement." 120 Mass. (Atwill vs. Mackintosh), pp. 177, 183; citing: 13 An. 239; 5 E. and B. 344; 5 An. 169.

It follows from the foregoing that communications within the qualified privilege are not actionable merely because they are false or defamatory, but express malice must be made evident.

It is ordered, adjudged and decreed that the judgment appealed from is affirmed.