(101 South. 411)

No. 26383.

## LEININGER v. NEW ORLEANS ITEM PUB. CO., Inc., et al.

(June 27, 1924. Rehearing Denied by Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Libel and slander** &#9092;42(2)—Newspaper report of proceedings of municipal council is privileged.

Fair and accurate newspaper report of proceedings had at public meeting of municipal council in which public has an interest is privileged, though it contains defamatory matter.

2. **Libel and slander** &#9092;42(2) — Inaccuracies held not such as to destroy privileged character of report of public proceedings.

Privileged character of newspaper report of report by commissioner of public safety to city council in matter of abuse of parole power by recorders *held* not destroyed by slight inaccuracies in headlines, especially as body of report clearly explained headlines.

**3. Libel and slander** ⊚⊸112(2) — **Malice in newspaper publication of proceedings in city council, destroying its privileged character, held not established.**

Newspaper publication of commissioner's report to city council concerning abuses of parole power by recorders *held* not shown to have been prompted by malice.

**4. Libel and slander** ⊚⊸42(2)—**Privileged character of newspaper publication of report of public officer held not destroyed by inaccuracies of report.**

Privileged character of defendant newspaper's report of report by commissioner to municipal council in matter of public interest, published by defendant in good faith and without actual malice, was not destroyed by subsequent discovery that report of commissioner was incorrect in whole or in part.

Appeal from Civil District Court, Parish of Orleans; Sam. A. Le Blanc, Judge.

Action by Jacob Leininger against the New Orleans Item Publishing Company. Inc., and others. Judgment for defendants, and plaintiff appeals. Affirmed.

George P. Nosacka, of New Orleans, for appellant.

Louis H. Gosserand, of Gretna, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. Plaintiff was appointed recorder of the first recorder's court for the city of New Orleans in December, 1920, and was serving as such in March, 1922. In the year last mentioned dissatisfaction arose among some in the city concerning what was considered an abuse of the parole system. The complaint involved the recorders of the city. The New Orleans Item, a newspaper owned by one of the defendants herein, published several articles concerning the matter, and the commission council of the city, in whom is vested by section 94 of article 7 of the Constitution of 1921, the power of removing recorders, instituted an investigation into the alleged abuse, and called upon Stanley Ray, commissioner of public safety, who was a member of the commission council, to make a report touching the matter. On March 14, 1922, the commissioner of public safety made his report. The report is quite an extensive one, and covers paroles issued by the various recorders, judges, and other officials in the city from January 1, 1921, to March 1, 1922. The commissioner includes in his report a communication from a patrolman and a detective which is as follows:

"We would report having arrested on January 3, 1922, at 3:30 a. m., at South Rampart near Girod street, the following named parties, and charged them with 1436, D. and S., relative to having no honest visible means of support: John Cassidy, Harry Tobler, Gasper Demaria, all white men. These men were tried in the first recorder's court by Judge Leininger and fined $15 or 30 days in jail, and after we left the court the men were released without paying a fine.

"We would report that on the morning of the arrest we followed these men who were walking up and down South Rampart street with a sack under their arms, evidently looking to rob a show case, and about three weeks later these same men were arrested and charged with breaking several show cases; some of the stolen goods were found in their possession. These men were well-known thieves and police characters, and were fined in our presence, and when we left the court the fine was canceled by Judge Leininger, and they were turned loose."

The report, from which the foregoing excerpt is taken, appears to have been made to the commission council, in open session, on March 14, 1922. Two days later the defendants published on the front page of their paper, The New Orleans Item, the following article:

"Leininger Fines in Public, Frees Notorious Crooks in Private, Say Sleuths.

"When the detectives were in the courtroom, Judge Leininger of the first recorder's court, fined three men, John Cassidy, Harry Tobler and Gasper Demaria, $15 or 30 days in jail.

"'When we left the court the fines were canceled by Judge Leininger and the men were turned loose,' the detectives discovered, according to the report of Safety Commissioner Ray, submitted to the commission council Tuesday.

·"Following is the report of the detectives. [Here follows two paragraphs, containing, word for word, the excerpt from the report of the commissioner of public safety, given above.]"

Plaintiff was greatly aggrieved by the foregoing publication in the New Orleans Item; and, being aggrieved, instituted this suit against the corporation that owns the paper, against its publisher and its editor, in solido, for $100,000 damages, with legal interest thereon from judicial demand. He alleges that said article is false and untrue, and that its publication was prompted by malice. He also alleges in a general way, evidently for the purpose of showing the malice with which the foregoing publication was made, that the Item published repeatedly between March 6 and 22, 1922, articles of the same general tenor as the one published on March 16, 1922, and set forth above.

The defendants deny that the article was published maliciously, and aver that the publication was a privileged one.

·"The case was tried by the court with a jury. The jury returned a verdict for the defendants ·by a vote of 10 to 2. Plaintiff, having failed in his effort to obtain a new trial, has appealed.

### Opinion.

[1] A report, by a newspaper, of proceedings had at a public meeting of a municipal council, in which proceedings the public has ·an interest, when the report is a fair and accurate one of the proceedings had, is privileged, even though it contains matter defamatory of another. Newell, Slander and Libel (3d Ed.) § 643, p. 652; Wallis v. Bazet, 34 La. Ann. 131; Meteye v. Times Democrat ·Pub.· Co., 47 La. Ann. 824, 17 South. 314. Reports of such proceedings are privileged in the same manner as are reports of judicial proceedings. Newell, Slander and Libel (3d Ed.) § 652. · It is not necessary in reports of judicial proceedings, and hence of the proceedings of municipal councils, "that the report should be verbatim; nor is absolute accuracy essential so long as the report is substantially correct. A few slight accidental errors will not destroy the privilege, provided the whole report, as published, produces materially the same effect on the mind of the reader as an absolutely correct report would have done." Odgers, Libel and Slander (5th Ed.) p. 333.

An examination of the first two paragraphs of the article published in the Item shows that these paragraphs are in strict accord with the substance of the report of the commissioner of public safety made to the council in open session concerning the case against Cassidy and others. As the report of the commissioner of public safety is based upon a report made to him by others, the third paragraph, read in connection with the second, is intended to indicate that fact. The fourth and fifth paragraphs are a copy of the report made to the commissioner of public safety, and incorporated in the commissioner's report as his report on the case, and are a verbatim copy of the commissioner's report thereon.

[2] From the foregoing, in so far as concerns the body of the article published in the Item, we conclude that it is an accurate statement of the report made by the commissioner of public safety to the council, which report was nothing less than a proceeding had before the council in a matter over which it had jurisdiction—the abuse of the power to release on parole—by virtue of its power to remove recorders from office. The only possible objection which there could be to the publication from a legal standpoint is its title or headlines. The title or heading of the article, in a measure, goes beyond the report of the commissioner. However, this may be said to be only slightly so, and not sufficiently to make the publication actionable or to destroy it as a privileged one, especially as the first two paragraphs of the article, which are short, serve to explain the headlines clearly and fully.

[3, 4] It is urged, however, that the publication was prompted by actual malice; and therefore that the defense that the publication was a privileged one is destroyed. We have considered the evidence offered to show malice, but fail to find that it discloses any. To the contrary, we find that the publication was prompted by a desire to advise the public concerning a matter in which they had an interest, and in an effort to correct an abuse concerning which complaint had been made. It is true that the report made by the commissioner, and published by the Item, that plaintiff, after having convicted and sentenced the three prisoners named, remitted their fines and released the prisoners, so soon as the detectives, who reported the case, left the courtroom, is not correct However, as the Item published the report of the commissioner in good faith and without actual malice, the fact that the report of the latter was incorrect in whole or in part, and therefore that the publication by the paper does not reflect the truth, does not have the effect, after the discovery of the error, of destroying the privilege exercised and of rendering the publication actionable.

For the reasons assigned, the judgment appealed from is affirmed, appellant to pay the costs of appeal.

Rehearing refused by the WHOLE COURT.