121 So.2d 222

**C. Kenneth DESHOTEL**

v.

**John R. THISTLETHWAITE.**

No. 44116.

May 31, 1960.

Rehearing Denied June 29, 1960.

Andrus & Pavy, Lewis & Lewis, Opelousas, for defendant-appellant.

Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for plaintiff-appellee.

HAWTHORNE, Justice.

The appeal in this case is from a judgment of the district court awarding petitioner $5,000 in damages under Article 2315 of the Louisiana Civil Code for an alleged defamation.

C. Kenneth Deshotel, an attorney, brought this suit against John R. Thistlethwaite, editor and publisher of the Daily World, a St. Landry Parish newspaper with a circulation of about 9,000, for $90,000 in damages because of allegedly defamatory remarks made by Thistlethwaite

in a television appearance in Lake Charles on, July 18, 1956, a résumé of Thistlethwaite's speech which appeared in his Daily World the next day, and various publications made by the editor thereafter allegedly defaming Deshotel. The petition in this case alleged that the defamatory statements uttered and published by Thistlethwaite were false, and that they had slandered and libeled Deshotel's good name, reputation and character before his friends, the courts and the public in general.

The essence of the defamation uttered and published by Thistlethwaite was that during Deshotel's campaign to be elected United States Congressman for the Seventh Congressional District of Louisiana, Deshotel falsely claimed to be a combat fighter pilot during World War II, although he never in fact saw combat during that conflict, and that "when he was recalled to active duty for the Korean War, Deshotel took off his wings and refused to fly."

Thistlethwaite's answer to this suit defended his remarks concerning Deshotel on the ground that they were true, and in the alternative that they enjoyed a qualified privilege as fair comment and criticism and hence were not actionable.

. Thistlethwaite apparently concedes the defamatory character of his remarks about Deshotel, and he could hardly do otherwise with any degree of persuasiveness because in effect he accused Deshotel of being a coward, a liar, and a mutineer.

■ In Louisiana proof of the truth of a defamatory remark is a valid defense in a civil suit for defamation. R.S. 13:3602; Madison v. Bolton, 234 La. 997, 102 So.2d 433, and numerous cases there cited. The first issue to be determined on this appeal, therefore, is whether in his campaign speeches Deshotel was falsely claiming to be a combat fighter pilot during World War II, and whether in the Korean conflict he turned in his wings and refused to fly.

At the time that this case was tried in 1958, C. Kenneth Deshotel was 35 years old, a resident of St. Landry Parish, a lawyer and a representative in the State Legislature. He enlisted as a naval aviation cadet in 1942 and was in training until almost the end of the Second World War. Although he received his commission and wings as a fighter pilot in August of 1944, he never engaged in combat with the enemy because the war ended a few weeks after he arrived in the Hawaiian area on July 24, 1945. Sometime in 1946 the young aviator joined the reserves. He flew regularly until 1948 and drew flight pay in the Reserve Officer Corps from 1947 to 1952, when he went back on active duty. About this time he entered Tulane Law School, receiving his law degree from that school in June of 1952. The next month he was

informed by the navy that he had been selected for recall to active naval service.

On August 3, 1952 Deshotel wrote a letter to the Chief of Naval Personnel stating that he had just recently become an attorney, that he was associated in a general law practice in Opelousas, that it was not his desire to avoid performing a tour of active duty, but that he would rather perform that duty as a legal officer than as an aviator. His letter ended by requesting that his classification be changed from aviator to legal officer.

On September 23, 1952 Deshotel was informed by the office of the Chief of Naval Personnel that he could not become a legal officer (apparently he was too young and lacked the requisite years of practice), that he was needed in the aeronautic organization, that he should advise the Chief of Personnel whether he wished to terminate his flight status, and that if he did so wish he would be made an administrative officer within the aeronautic branch of the navy.

On December 15, 1952 Deshotel reported for duty. Two days later he wrote a letter to the Chief of Naval Personnel stating that he no longer had any desire to fly, and that considering the safety of his fellow pilot and of himself, he thought it would be to the best interest of the navy that his designator, or classification, be changed. In this letter he again set out his legal training and experience and asked to be classified as a legal specialist.

The next day Deshotel was removed from a flight status under a navy rule which stated that "orders to duty involving flying will be revoked by competent authority in the case of those naval aviators who voluntarily request duty not involving flying." The record shows that Deshotel did his active tour of duty during the Korean War as an administrative officer in the aeronautic branch of the navy.

■■ As for the first part of the defamatory statement made by Thistlethwaite—that during Deshotel's campaign to be elected United States Congressman for the Seventh Congressional District of Louisiana, Deshotel falsely claimed to have been combat fighter pilot during World War II although in fact he never saw combat during that conflict—the record indicates that during his campaign speeches Deshotel did often give his audiences to understand that he had been in the Pacific as a navy fighter pilot during most of World War II, flying off of carriers in that area from 1942 on. The evidence in this case therefore convinces us that this statement concerning Deshotel is true. However, there is no truth at all to the second part of the defamatory statement which Thistlethwaite uttered and published about Deshotel—namely, that when "he was recalled to active duty for the Korean War, Deshotel took off his wings and refused to fly." On the contrary, the evidence before us shows that Deshotel did an active tour of

duty in the aeronautic branch of the navy during the Korean War, as we pointed out above. In fact, Deshotel testified that even at the time of the trial of this case in 1958 he wore his wings whenever in uniform. In asking the Chief of Naval Personnel to terminate his flight status and to assign him to duty not involving flying and preferably legal in nature, Deshotel was only doing what he had a perfect right to do under navy regulations, and what the Chief of Naval Personnel had in fact suggested that he do under the circumstances.

We conclude therefore that Thistlethwaite's publication charging that "when he was recalled to active duty for the Korean War, Deshotel took off his wings and refused to fly," makes it appear that Deshotel acted in an irrational, cowardly and rebellious manner, that it is completely false, and hence that the defense of truth is not available to appellant to protect him from liability for the damaging effects of this particular statement.

Having decided that Thistlethwaite's defense of truth has no merit, we must next consider his alternative defense—i. e., that his charge about Deshotel's cowardly conduct during the Korean War, even though false, is not actionable because it amounted to no more than fair comment and criticism, and so enjoyed a qualified privilege.

██ The law relied on here by appellant is incorrectly stated, and the cases cited are for the most part inapposite, as statements made relative to the actions of a candidate for public office are not, under Louisiana law, qualifiedly privileged even though false. In Cadro v. Plaquemines Gazette, 202 La. 1, 11 So.2d 10, 11, we said, quoting from 110 A.L.R. 412:

" 'In the majority of jurisdictions the rule that fair comment on and criticism of the acts and conduct of a public officer or candidate for public office are, in the absence of malice, privileged, does not apply to a false statement of fact. In these jurisdictions, a defamatory statement of fact concerning one in public life, or who is a candidate for office, if false, is as actionable as would be such a statement concerning one in private life.'

"Louisiana is one of the States which adhere to the majority rule. See Levert v. Daily States Pub. Co., 123 La. 594, 49 So. 206, 23 L.R.A.,N.S., 726, 131 Am.St. Rep. 356; Smith v. Lyons, 142 La. 975, 77 So. 896, L.R.A.1918E, 1; Otero v. Ewing, 162 La. 453, 110 So. 648, 56 A.L.R. 249; Id., 165 La. 398, 115 So. 633."

In Madison v. Bolton, 234 La. 997, 102 So.2d 433, 438, we again stated that fair comment and criticism, sometimes termed the doctrine of qualified privilege, is a valid defense to a civil suit for libel, "but not an available defense where applied to a false statement of fact * * *".

See also Kennedy v. Item Co., 213 La. 347, 34 So.2d 886; Martin v. Markley, 202 La. 291, 11 So.2d 593.

The cases relied on by counsel for Thistlethwaite in connection with his argument that even false statements about public officials are privileged—Berot v. Porte, 144 La. 805, 81 So. 323, 3 A.L.R. 1651; Nagim v. Morrison, 232 La. 826, 95 So.2d 326; Buisson v. Huard, 106 La. 768, 31 So. 293, 56 L.R.A. 296; Baysset v. Hire, 49 La. Ann. 904, 22 So. 44—are easily distinguishable. They deal with the conditional privilege which shields the statements of one who has a special duty to speak. See Prosser, Law of Torts (2d ed. 1955) pp. 614–617. To be actionable such statements must have been made maliciously, with knowledge of their falsity. Thus in Berot v. Porte, supra, the defendant had a social duty to report on plaintiff to the Druids organization, which had requested the information; in Nagim v. Morrison, supra, the mayor and the police chief were obliged by law to charge violations before the tax board; in Buisson v. Huard, supra, the defendant was asked for information about plaintiff by relatives of a young lady whom plaintiff was courting; and in Baysset v. Hire, supra, a father imparted defamatory information about plaintiff to his daughter. In another case relied on here by appellant, Addington v. Times Publishing Company, 138 La. 731, 70 So. 784, we held that the newspaper account complained of was substantially true, contrary to our holding in the instant proceeding. Further, Leininger v. New Orleans Item Publishing Company, 156 La. 1044, 101 So. 411, concerns a report by the defendant newspaper of proceedings at a public meeting of the municipal council, and was therefore held to be privileged even though it contained defamatory matter which was untrue. In Leininger the court likened the report complained of to that of judicial proceedings. See Prosser, op. cit. supra, p. 623, "Reports of Public Proceedings." And although it can be argued that appellant's position in the case at bar derives some support from language appearing in our decision in Flanagan v. Nicholson Publishing Company, 137 La. 588, 68 So. 964, L.R.A.1917E, 510, this court has pointed out in subsequent decisions that the Nicholson case is only authority for the proposition that Louisiana recognizes the doctrine of qualified privilege respecting fair comment and criticism of public officers and men in public life, but that "the privilege does not extend to the publication of false statements of fact concerning public officers." Martin v. Markley, 202 La. 291, 11 So.2d 593, 594; Kennedy v. Item Co., 213 La. 347, 34 So.2d 886.

From the above we conclude that Thistlethwaite's accusation concerning Deshotel's refusal to fly in the Korean War does

not enjoy a qualified privilege as fair comment and criticism because it is a false statement of fact.

## Quantum

■ As we stated above, Deshotel obtained a judgment awarding him $5,000 in damages in the district court. In this court he has answered Thistlethwaite's appeal and asks that his award be increased to $12,500.

In his brief appellee concedes that there is no fixed rule by which to evaluate in dollars and cents the extent of the damage inflicted by a defamatory statement. See Kennedy v. Item Co., 213 La. 347, 34 So.2d 886. As bases for an increase in damages to $12,500, he mentions the fact that the Daily World has the largest circulation in his home parish, and argues that the damage to his career is very great because he is young and just starting out, and that therefore he should get more in damages than the $7,500 which was awarded to Mr. Madison (see Madison v. Bolton, supra), and to Mr. Kennedy (see Kennedy v. Item Co., supra), who were both older men and well established in their careers.

We are not impressed with these arguments. We think that the $5,000 which was awarded to appellee in the district court amply compensates him for any damage which he has suffered because of Thistlethwaite's defamatory publications.

The district court judgment is affirmed for the reasons given above. Appellant is to pay all costs of this appeal.

GARDINER, J., recused.

Rehearing denied; HAMITER and McCALEB, JJ., dissenting.