894 So.2d 480 (2005)
Rev. Norwood THOMPSON, Jr. and/His Wife Wynnette Thompson
v.
EMMIS TELEVISION BROADCASTING, d/b/a WVUE-TV Channel 8 In New Orleans and XYZ Insurance Company.
No. 2004-CA-1020.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 2005.
*482 Harry E. Cantrell, Jr., New Orleans, LA, for Plaintiff/Appellant, Rev. Norwood Thompson, Jr.
Mary Ellen Roy, Christopher K. Ralston, Phelps Dunbar LLP, New Orleans, LA, for Defendant/Appellee, Emmis Television Broadcasting, L.P. d/b/a WVUE-TV Channel 8 In New Orleans.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
This case involves a defamation action brought by Reverend Norwood Thompson, Jr. against Emmis Television Broadcasting, doing business as WVUE TV Channel 8 in New Orleans, Louisiana. The trial court granted an exception of no cause of action and a special motion to strike Reverend Thompson's cause of action. Reverend Thompson is appealing the trial court's dismissal of his case.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Reverend Thompson and his wife, Wynette Thompson[1], initially sued WVUE in connection with investigative news reports that were aired. Kim Holden, a WVUE reporter, did the research for the reports and also appeared on air in the broadcasts of the reports. The Thompsons alleged that the reports were defamatory and that they disclosed information from a sealed court record in another suit filed by Reverend Thompson (the "Prior Suit"). The Prior Suit was filed against First Zion Baptist Church (where Reverend Thompson was the pastor), the church's bank (Bank One), eight members of the church's congregation, and the insurers of the defendants.
Ms. Holden reviewed court records in the Prior Suit in the clerk's office at this Court while the Prior Suit was on appeal.[2] She also attended open court proceedings in the Prior Suit. Additionally, Ms. Holden interviewed Reverend Thompson, his attorney, members of the church's congregation, police investigators, and others in preparing the reports.
The broadcasts by WVUE included taped statements by persons on both sides of the controversy between Reverend Thompson and the defendants in the Prior Suit. The reports included statements by persons who spoke favorably about Reverend Thompson and his character as well as by persons with other viewpoints. The broadcasts also included statements made by Reverend Thompson and his counsel.
Based on these broadcasts, Reverend and Mrs. Thompson filed the instant suit alleging that WVUE had defamed them, and an amended petition was filed by Reverend Thompson four months later. WVUE filed exceptions of vagueness, ambiguity, and no right of action as well as a *483 special motion to strike. The trial court granted the exceptions and dismissed the petition and the amended petition.
Reverend Thompson then filed a new petition, and WVUE filed exceptions of no right of action and vagueness and ambiguity as well as a special motion to strike the petition. After a hearing on those exceptions, the Reverend Thompson filed a second amended petition.
WVUE filed a peremptory exception of no cause of action with respect to the second amended petition. WVUE sought to have the second amended petition dismissed on the grounds that there were legal deficiencies in Reverend Thompson's defamation claim that were apparent on the face of the petition. WVUE also filed a special motion to strike pursuant to La. C.C.P. art. 971, which provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of ... free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim." La. C.C.P. art. 971(A)(1).
Neither Reverend Thompson nor his counsel attended the hearing on the exception and the motion. The trial court judge considered the exception and motion filed by WVUE and rendered a judgment dismissing Reverend Thompson's second amended petition with prejudice. Subsequently, the trial court judge denied Reverend Thompson's motion for a new trial.
Reverend Thompson is now appealing the dismissal of his lawsuit. Also, WVUE has filed an answer to the appeal claiming that the trial court judge should have awarded WVUE reasonable attorneys' fees and costs pursuant to La. C.C.P. art. 971(B), which provides that "a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees and costs."

DISCUSSION

Assignments of Error
Reverend Thompson has made two assignments of error. First, he contends that the trial court erred by granting WVUE's exception of no cause of action and its special motion to strike. Second, he contends that the trial court erred by denying his motion for a new trial.

Exception of No Cause of Action and Special Motion to Strike
At the outset we must determine whether the second amended petition stated a cause of action for defamation involving speech that was not protected by the constitutional guarantees of freedom of the press and freedom of speech. United States Const. amend. I[3]; La. Const. art. I, § 7[4]. If we find that the speech was protected by the constitutional guarantees, La. C.C.P. art. 971 is applicable.
La. C.C.P. art. 971(A)(1) provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of ... free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim." The court *484 is required to consider the pleadings, the supporting affidavits, and the opposing affidavits stating the facts upon which the liability or defense is based. La. C.C.P. art. 971(A)(2).
The second amended petition alleged that WVUE "ran a series of news reports repeating and sensationalizing the false and damaging accusations" that had allegedly been made by church members and were the subject of the defamation action brought in the Prior Suit. The second amended petition further alleged that WVUE "broadcast false and defamatory allegations that Rev. Thompson had embezzled church funds and was `stealing church money. . . ."
In Trentecosta v. Beck, 96-2388, p. 10 (La.10/21/97), 703 So.2d 552, 559, the Louisiana Supreme Court defined defamation as a tort involving the invasion of a person's interest in his or her reputation and good name. In Costello v. Hardy, XXXX-XXXX, p. 12 (La.1/21/04), 864 So.2d 129, 139, the Supreme Court enumerated the following four elements that are necessary to establish a cause of action for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault at least amounting to negligence on the part of the publisher of the information; and (4) resulting injury. The Supreme Court also stated that the fault element is often considered in the jurisprudence to be actual or implied malice. Id. When statements are made about a public figure, a plaintiff must prove actual malice. The plaintiff must, therefore, prove that the defendant either knew the statement was false or acted with reckless disregard for the truth. XXXX-XXXX, p. 14, 864 So.2d at 140-41.
In Sassone v. Elder, 626 So.2d 345 (La.1993), the Louisiana Supreme Court upheld the trial court's granting of a summary judgment in favor of a television news reporter and a television station. In the Sassone case the television station aired a series of investigative reports in which the plaintiffs, who were attorneys, alleged that the news reporter who broadcast the reports made knowingly false statements impugning their professional reputations. For example, the reporter posed the following rhetorical question: "You're not trying to take these people to the cleaners, are you?" Additionally, one of the reports that was aired contained an allegation by a critic of the attorneys that "[t]hey do not have a working number", implying that the attorneys did not have professional offices with telephones.
The Supreme Court stated in Sassone that "[p]laintiffs in effect claim defamation by innuendo." 626 So.2d at 353. The Supreme Court further stated that in defamation by implication or innuendo, a court must distinguish between statements of opinion and statements of fact. The Supreme Court ultimately concluded that "[w]hen a public figure and matter of public concern are involved, perhaps there can be no defamation by implication." 626 So.2d at 354.
In Fitzgerald v. Tucker, 98-2313, p. 11 (La.6/29/99), 737 So.2d 706, 716, the Louisiana Supreme Court discussed situations where defamatory words are subject to the protections of the First Amendment to the United States Constitution. The Supreme Court stated:
Nonetheless, not all defamatory statements are actionable. Rather, many statements are protected by the First Amendment's guarantee of freedom of speech. For example, "`a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection.'" Romero v. Thompson [Thomson Newspapers], 94-1105 *485 (La.1/17/95), 648 So.2d 866, 870 (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).) Also, "[s]peech on matters of public concern enjoys enhanced constitutional protection."
Romero, 648 So.2d at 869.
In the instant case the second amended petition stated that WVUE "broadcast false and defamatory allegations that Rev. Thompson had embezzled church funds and was `stealing church money'" and that "he had misappropriated $100,000 in church funds." The petition also alleged that WVUE violated the order sealing the record in the Prior Suit when it broadcast information that Ms. Holden obtained from the sealed record.
The allegations in the petition did not allege that WVUE had said that Reverend Thompson was an embezzler and had stolen church funds. The petition stated that WVUE reported that these allegations had been made by others, not by WVUE or its reporter. WVUE simply reported that statements had been made by members of Reverend Thompson's congregation, who were being sued by Reverend Thompson. WVUE did not report any facts that were defamatory per se.
The evidence admitted into the record in connection with the hearing on the exception of no cause of action and the motion to strike showed that Reverend Thompson was a prominent member of the New Orleans civic and religious community. He became a public figure through his political activism, and his activities were frequently covered by the media. Further, Reverend Thompson never claimed that he was not a public figure.
Because Reverend Thompson was a public figure, the fact that he was suing the church where he was the pastor, as well as certain members of the congregation, was newsworthy and a matter of public interest. WVUE simply reported that Reverend Thompson had filed suit against the church and some of its members, because he claimed that they had defamed him by alleging that he had embezzled church funds and misappropriated church money. The report that was broadcast was balanced. Both Reverend Thompson and his attorney were given an opportunity in the reports to present Reverend Thompson's position. Although the broadcasts included negative statements by some of the defendants, they also included favorable comments by people who were not being sued.
Based on the fact that Reverend Thompson has made himself a public figure through his political activism and his position in the community, we find that the speech contained in the WVUE broadcasts was speech that was protected under the First Amendment to the United States Constitution as well as under La. Const. Art. I, § 7. Therefore, the allegations in the second amended petition are subject to the provisions of La. C.C.P. art. 971.
As discussed above, article 971 provides that a cause of action based on the furtherance of a person's right of free speech is subject to a special motion to strike except when a court has determined that the plaintiff in the action has established a probability of success on the claim. In the instant case, the trial court did not find that Reverend Thompson had established a probability that his claim against WVUE would succeed.
As set forth by the Louisiana Supreme Court in the Costello case discussed above, for Reverend Thompson to establish a probability of success in his suit against WVUE, he must prove that WVUE published a false and defamatory statement about him that resulted in an injury to *486 him. Additionally, he must prove fault on the part of WVUE.
We agree with the trial court that Reverend Thompson did not establish a probability that his claim against WVUE would succeed at trial. WVUE never alleged that Reverend Thompson embezzled money or misappropriated church funds. These allegations were made by others who were being sued for defamation in the Prior Suit. The fact that these allegations were made was true. They were clearly characterized by Ms. Holden as allegations that were made by others, and none of the statements made in the WVUE broadcasts was false. Matters involving allegations of misappropriation of church funds that resulted in a lawsuit by the pastor of the church against the church and individual members of the congregation were matters of public interest and concern. See, e.g., Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552, where an investigation into charitable bingo operations was considered a matter of public interest.
For Reverend Thompson to establish a probability of success in his suit against WVUE, he must prove that there was fault on the part of WVUE. This means that he must show that WVUE acted with malice. See Costello v. Hardy, XXXX-XXXX, p. 12 (La.1/21/04), 864 So.2d 129, 139. In a defamation case involving a matter of public interest, the plaintiff must prove that the defendant knowingly published false statements or acted with reckless disregard of the truth or falsity of the statements. See Garrison v. State of Louisiana, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964), where the United States Supreme Court stated that "[t]ruth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." See also Schaefer v. Lynch, 406 So.2d 185, 188 (La.1981).
Although Reverend Thompson alleged in his second amended petition that WVUE acted with malice, he failed to allege any facts to support the claim that WVUE acted with malice. Reverend Thompson presented no evidence to show a reasonable probability that he could prove that either WVUE or its reporter, Ms. Holden, harbored any malice, hostility, or ill will toward him. Furthermore, there was no showing that what was broadcast was false. WVUE made it very clear in its broadcasts that the allegations of embezzlement and misappropriation of funds were allegations made by certain members of the church where Reverend Thompson served as pastor. There were no allegations of any type of wrongdoing made by WVUE or its reporter. Even Reverend Thompson did not contend that WVUE's report that allegations had been made was false; it is undisputed that such allegations were made.
Truth is a defense to a defamation suit. See, e.g., Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960); Bolanos v. Madary, 609 So.2d 972 (La.App. 4th Cir.1993). In the Deshotel case the Louisiana Supreme Court stated that "[i]n Louisiana proof of the truth of a defamatory remark is a valid defense in a civil suit for defamation." 240 La. at 16, 121 So.2d at 223. In the instant case the allegedly defamatory statements made by WVUE were that members of Reverend Thompson's church had alleged that he had embezzled church funds and misappropriated church money and that he had sued them for defamation as a result of those statements. The statements made by WVUE were, in fact, true. Therefore, truth would defeat Reverend Thompson's claim against WVUE.
Based on the foregoing discussion, we find that Reverend Thompson had no probability of success on his claim. Therefore, *487 the trial court correctly granted WVUE's special motion to strike the pleadings in the instant case pursuant to La. C.C.P. art. 971.

Motion for New Trial
Reverend Thompson moved for a new trial after his second amended petition was dismissed. He asserted that he and his counsel failed to attend the hearing on the exception of no cause of action and the motion to strike, because they were under the impression that the trial court would consolidate the instant case with the Prior Suit and transfer both cases to another section of the trial court.
La. C.C.P. art. 1972 provides as follows:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1)When the verdict or judgment appears clearly contrary to the law and the evidence.
(2)When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
We find that none of these situations is applicable in the instant case. Therefore, a new trial is not warranted.
Reverend Thompson urged that the instant case is one in which a new trial should be granted pursuant to La. C.C.P. art. 1973, which provides that "[a] new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law." The courts of this state, however, have routinely denied motions for new trials where the parties and the attorneys representing them have failed to appear in court for the original trial. See, e.g., Mayo v. Simon, 94-590 (La.App. 3 Cir. 11/2/94), 646 So.2d 973 (motion for new trial denied when no appearance was made by defendants or counsel due to failure of counsel's secretary to inform court of scheduling conflict); Joseph v. Hendrix, 536 So.2d 448 (La.App. 1st Cir.1988) (motion for new trial denied when defendant did not appear due to his marking wrong date on calendar).
In the instant case Reverend Thompson has stated that he and his counsel did not attend the hearing on the exception of no cause of action and the motion to strike through "inadvertant [sic] error," because "[a]pparently, the instant action was not transferred before the November 21, 2003 hearing as expected." We find no evidence in the record that is before us to indicate that a motion to transfer was ever filed. Even if a motion to transfer were in the record, it was still incumbent upon Reverend Thompson and his counsel to verify the transfer rather than simply assuming that the transfer had occurred without notice to them. An assumption of an action occurring in a case without verification is not a good ground upon which to grant a motion for a new trial. We find that the trial court properly denied Reverend Thompson's motion for a new trial.

Request for Attorney's Fees by WVUE
In its answer to the appeal in this case, WVUE asserted that the trial court erred in not awarding attorneys' fees to it. La. C.C.P. art. 971(B) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover reasonable attorney's fees and costs." (Emphasis added.) Although the language in the statute is mandatory, Reverend Thompson argues that this Court has not always awarded attorneys' fees to the prevailing party where a special motion to strike has been granted pursuant to La. C.C.P. art. 971(B). In support of his argument, Reverend Thompson cites Stern v. Doe, XXXX-XXXX, *488 pp. 6-7 (La.App. 4 Cir. 12/27/01), 806 So.2d 98, 102, where this Court, quoting State, Department of Transportation and Development v. Williamson, 597 So.2d 439, 441-442 (La.1992), stated that "[r]egardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law."
We note, however, that in the Stern case there were factors that mitigated against the assessment of attorneys' fees against the plaintiff. This Court found in the Stern case that the plaintiff was proceeding in forma pauperis and was thus unlikely to be capable of paying attorneys' fees for the defendant. Further, there was insufficient evidence from which to conclude that the plaintiff's filing of the defamation action was an abuse of the judicial process.
In the instant case we find no mitigating factors to excuse Reverend Thompson from paying the reasonable attorneys' fees incurred by WVUE. Therefore, we reverse the trial court judgment insofar as it failed to make an award to WVUE on its claim for attorneys' fees and costs under article 971. We hereby remand this case to the trial court for a determination of what reasonable attorneys' fees and costs were incurred by WVUE.

CONCLUSION
The judgment of the trial court granting WVUE's exception of no cause of action and its special motion to strike pursuant to La. C.C.P. art. 971 is affirmed. The trial court's failure to award reasonable attorneys' fees and costs to WVUE as the prevailing party on the special motion to strike under article 971 is reversed. This matter is remanded to the trial court for a determination of what reasonable attorneys' fees and costs were incurred by WVUE and for further proceedings in accordance with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Mrs. Thompson was a party to the original petition, but Reverend Thompson was the only party to the subsequently filed petition and amended petitions.
[2] Although the court records had been sealed by the trial court judge, when the records were transferred to this Court on appeal, not all of the volumes in the record were labeled as being part of a sealed record. Therefore, Ms. Holden was able to access any volumes of the appellate record that were not labeled. Subsequent to their being reviewed by Ms. Holden and the discovery of the labeling error, those volumes were labeled as sealed records.
[3] The First Amendment to the U.S. Constitution states in relevant part that "Congress shall make no law . . . abridging the freedom of speech, or of the press. . . ."
[4] The Louisiana Constitution provides that "[n]o law shall curtail or restrain the freedom of speech or of the press."