# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-576
## consolidated with 05-577


**CARLA RACHAL**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF
WILDLIFE & FISHERIES, ET AL.**


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NOS. 203,254 and 203,890,
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


**MICHAEL G. SULLIVAN
JUDGE**


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**AFFIRMED.**

**Daniel E. Broussard, Jr.**
**Broussard, Bolton, Halcomb & Vizzier**
**Post Office Box 1311**
**Alexandria, Louisiana  71309-1311**
**(318) 487-4589**
**Counsel for Plaintiffs/Appellees:**
      **Carla Rachal**
      **David McAlpin**
      **Leslie McAlpin**

**Lewis O. Lauve, Jr.**
**Special Assistant Attorney General**
**Post Office Box 307**
**Alexandria, Louisiana  71309-0307**
**(318) 449-1937**
**Counsel for Defendants/Appellants:**
      **State of Louisiana, Department of Wildlife & Fisheries**
      **Kelly Fannin**

SULLIVAN, Judge.

Carla Rachal and David McAlpin, employees of the Louisiana Department of Wildlife and Fisheries (LDWF), sued LDWF and Lieutenant Kelly Fannin for defamation. Leslie McAlpin, Mr. McAlpin's wife, sued Defendants for loss of consortium. The trial court awarded judgment in Plaintiffs' favor. LDWF and Lt. Fannin appeal. For the following reasons, we affirm the trial court's judgment.

*Facts*

This matter arises out of a report prepared and disseminated by Lt. Fannin. The report outlines details of an alleged telephone call Lt. Fannin received on August 27, 1999, in which the caller reported that he observed Ms. Rachal and Mr. McAlpin engaging in sex on a four-wheeler on August 26, 1999. On that date, Ms. Rachal and Mr. McAlpin were working a complaint of deer stand damage, as assigned by Lt. Fannin. Lt. Fannin did not prepare a report of the complaint until May 2000.

The trial court outlined the following facts in its Written Reasons for Judgment, which we adopt as our own:

> On July 1, 1999, Ms. Rachel [sic] received a one-day suspension for being out of uniform and not having her equipment in working order. Also on July 1, 1999, Mr. McAlpin was suspended one day for failure to follow his supervisor's instructions, intentionally or due to unsatisfactory performance, divulging confidential information supplied by an informant, and recording the conversation of the agents without their consent. In both occurrences, it was defendant Fannin who observed the actions of the plaintiffs that led to the disciplinary actions. Defendant Fannin initiated the complaint and recommended the disciplinary action.
>
> On July 12, 1999, plaintiff McAlpin filed an appeal of the disciplinary action with the State Civil Service Commission. This was plaintiff McAlpin's second civil service action against defendant Fannin. McAlpin and Fannin have a documented tumultuous history.
>
> Ms. Rachal filed a civil service appeal alleging that the disciplinary action was a result of sex discrimination by defendant Fannin. Additionally, on July 19, 1999, plaintiff Rachal was given an employee evaluation of "Needs Improvement" by defendant Fannin. On

August 17, 1999, Rachal filed a Request for Review of the rating defendant Fannin had given her with the then Secretary of LDWF Jimmy Jenkins.

On August 26, 1999, defendant Fannin assigned McAlpin and Rachal to work together at the Sugar Hill Hunting Club area in Natchitoches Parish. Defendant Fannin had received an undocumented complaint regarding vandalism of deer stands on the hunting lease and sent the agents to patrol the area. Defendant Fannin and Agent Joe Tarver were also working a complaint in the area. McAlpin and Rachal testified that nothing out of the ordinary occurred that night.

Defendant Fannin testified that on August 27, 1999, he received the report of sexual misconduct on the part of the plaintiffs at his home. It was made anonymously by telephone. From that day until May 26, 2000, defendant Fannin never mentioned to anyone with the LDWF or to the plaintiffs about the report that he received.

On October 8, 1999, Secretary Jenkins granted Rachal's request for review and reversed the "Needs Improvement" rating Fannin had given her. In December of 1999, Fannin filed a petition for damages against McAlpin in Winn parish. The petition alleged that McAlpin's letter of appeal to the Civil Service Commission contained slanderous and defamatory statements about Fannin. On May 15, 2003, the suit was dismissed with prejudice for failure to prosecute.

On May 25, 2000, a public hearing was held on Rachal's Civil Service appeal in Baton Rouge before a Civil Service referee. Defendant Fannin was subpoenaed to testify. Agent Tarver and defendant Fannin rode together from Winnfield to Baton Rouge. On the ride, defendant Fannin told Agent Tarver about the August 27, 1999 complaint he received regarding McAlpin and Rachal. This was the first substantiated time that defendant Fannin told anyone about the complaint he had received. Plaintiff McAlpin testified on behalf of Rachal at the hearing. The appeal was later found to be valid in plaintiff's favor.

. . . Ms. [Christy] Ellington was a secretary at the LDWF Regional office. . . . Ellington testified that Fannin was mad that Rachal had won her appeal. Ellington based this testimony on Fannin's demeanor following the ruling on the appeal. . . . Ms. Ellington worked in the office with Fannin for several years and stated, "If you know Kelly, he doesn't hide it when he's mad."

The day after the Rachal hearing, a meeting of LDWF agents was held at the Pineville Regional Office to gather documents that had been subpoenaed by McAlpin's attorney for his Civil Service hearing, which was to be held on June 1, 2000 at Pinecrest. . . . [A]t this meeting . . .

2

defendant Fannin handed Agent[s] Bonner and Constance the handwritten document detailing the complaint of sexual misconduct on the part of the plaintiffs on the night of August 26, 1999, and told them to review it. Subsequently, defendant Fannin showed the document to Captain Bryan Poston who was in charge of the region. Captain Poston called Major Keith LaCaze in Baton Rouge and reported the document. He had his secretary, Christy Ellington, fax it to Major LaCaze. Ms. Ellington was told by Agent[s] Bonner and Constance to read the document.

. . . .

. . . The testimony of Agent[s] Tarver, Constance, and Bonner, as well as Fannin's testimony as to what he told Melinda Martin [a confidential informant Lt. Fannin considered reliable] satisfy the publication element. Further, Major LaCaze testified that it was not proper to discuss the complaint outside the LDWF nor was it appropriate to talk to Tarver, Constance, and Bonner about the complaint.

Plaintiffs denied that they had ever engaged in sexual activities with one another. The allegations of misconduct were never proven. Further, McAlpin requested the LDWF to investigate and even offered to take a polygraph test. The plaintiffs called the president and several members of the Sugar Hill Hunting Club who attested to the fact that they were not aware of any report of sexual misconduct by plaintiffs on the night in question. Major LaCaze spoke with defendant Fannin about the report and determined it was an unsubstantiated report. Further, Major LaCaze testified, that in his opinion, based on his knowledge of McAlpin, he determined that the report was false.

### Issues for Review

1) The trial court erred in finding that plaintiffs satisfied the elements of a defamation claim.

2) The trial court erred by rendering a decision based on conjecture, supposition, and hearsay.

### Standard of Review

Whether defamation has been proven is principally a factual analysis; therefore, our review is governed by the manifest error standard. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard requires that we give great deference to the trier of fact's findings. *Rosell*

3

*v. ESCO*, 549 So.2d 840 (La.1989). Absent documents or objective evidence that contradict the witness's story or the story itself is so internally inconsistent or implausible on its face that a reasonable trier of fact would not credit the witness's story, a trier of fact's findings based on its decision to credit the testimony of one or two or more witnesses can virtually never be manifestly erroneous or clearly wrong. *Id.*

### *Discussion*

A plaintiff in a defamation case must prove all of the following elements by a preponderance of the evidence to prevail: defamatory words, publication, falsity, malice, and resulting injury. *Sommer v. State, Dep't of Transp. and Dev.*, 97-1929 (La.App. 4 Cir. 3/29/00), 758 So.2d 923, *writ denied*, 00-1759 (La. 10/27/00), 772 So.2d 122.

Defamatory words are words which tend to harm the reputation of another by the community's estimation of him or deterring third persons from associating with him. *Id.* The defamatory words must be communicated or published to someone other than the plaintiff to be actionable. *Id.*

> Words that expressly or implicitly . . . by their nature, tend to injure one's personal or professional reputation are considered defamatory *per se*. If the plaintiff proves publication of defamatory *per se* words, the elements of falsity, injury and malice are presumed, although they may be rebutted by the defendant.

*Id.* at 939.

Truth and privilege are defenses to a claim of defamation. La.R.S. 13:3602; *Elmer v. Coplin*, 485 So.2d 171 (La.App. 2 Cir.), *writ denied*, 489 So.2d 246 (La.1986). There are two general classes of privileged communications: (1) absolute or unqualified, which exists in a limited number of situations, such as certain

4

statements by judges and legislators in their official capacities; and (2) conditional or qualified. A conditional privilege is "applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty." *Toomer v. Breaux*, 146 So.2d 723, 725 (La.App. 3 Cir. 1962).

Lt. Fannin's report that Plaintiffs were seen having sex together on August 26, 1999, was defamatory *per se*. *Sommer*, 758 So.2d 923. Defendants argue that Lt. Fannin was merely "reporting" information provided to him by an anonymous third party and assert that the caller, not Lt. Fannin, defamed Plaintiffs. They also argue that the report was privileged because it was prepared in conjunction with Lt. Fannin's supervisory duties.

Lt. Fannin's credibility is the crux of this case, and it was seriously challenged by Plaintiffs. Lt. Fannin's superiors, Major LaCaze and Captain Poston, testified that the federal prosecutor for the district which includes the parishes to which Lt. Fannin is assigned will not accept a case for prosecution if Lt. Fannin will be a principal witness for LDWF. Marcus Constance, an LDWF agent, testified that the same is true of the Winn Parish District Attorney.

Lt. Fannin's testimony at trial was contradicted in several respects. Agent Tarver testified that Lt. Fannin told him about the report when they rode together to Ms. Rachal's May 25, 2000 hearing on her civil service appeal. Lt. Fannin denied relating this information to Agent Tarver, testifying that he discussed complaints about Ms. Rachal with Agent Tarver and simply asked him if he thought there was something "going on" between Ms. Rachal and Mr. McAlpin. Lt. Fannin testified that Agents Constance and Bonner picked up his report from a table and read it, but

5

they testified that he told them about the report. Lt. Fannin also testified that when he and Agent Tarver met Plaintiffs on August 26, 1999, Plaintiffs were riding together on a four-wheeler and that it was unusual for two agents to ride together on a four-wheeler, while LDWF agents questioned on this issue testified that it is not unusual for two agents to ride together on a four-wheeler.

Lt. Fannin's credibility was also called into question by his own actions. The alleged complaint was serious in nature, but Lt. Fannin did not immediately report the August 27, 1999 telephone call to his supervisor. Major LaCaze, Captain Poston, and all of the LDWF agents testified that LDWF policies and procedures require that a complaint of this nature be immediately reported to Plaintiffs' supervisors. Major LaCaze also testified that he believed Lt. Fannin received the telephone call; however, Wilbert Saucier, Mr. McAlpin's attorney in his civil service litigation, testified that Major LaCaze told him he believed Lt. Fannin fabricated the report. Lastly, Lt. Fannin's reasons for not reporting the complaint immediately were weak and simply did not ring true.

Based on the record, the trial court's acceptance of the testimony of Plaintiffs' witnesses over Lt. Fannin's testimony is reasonable, and we find no error with the trial court's conclusion that Lt. Fannin did not receive a complaint about Plaintiffs on August 27, 1999, and that he was not simply reporting a complaint made by an unknown person.

Even if Lt. Fannin did receive an anonymous call about Plaintiffs, he had to have a reasonable belief that the caller's complaint was true not to be liable for publishing a defamatory statement. *Thompson v. Emmis Television Broad.*, 04-1020 (La.App. 4 Cir. 1/19/05), 894 So.2d 480, *writ denied*, 05-417 (La. 4/22/05), 899

6

So.2d 580. Witnesses in this case included Plaintiffs' co-employees and acquaintances in the community. No one, except Lt. Fannin, testified that they believed the allegations. Indeed, there was very strong testimony that, based on the witnesses' personal knowledge of Mr. McAlpin, they considered the complaint completely unfounded upon hearing it, stating "David wouldn't do that" or something similar. Accordingly, we further find that, if Lt. Fannin did receive such a call, his "belief" that the alleged caller's statements were true was not reasonable.

Defendants did not establish that the complaint was true or that a privilege is applicable to Lt. Fannin's publication of the defamatory report. The LDWF agents who Lt. Fannin told about the complaint were his subordinates and did not have a corresponding interest or duty regarding the complaint; therefore, no privilege existed. *See Elmer*, 485 So.2d 171. Consequently, Defendants failed to rebut the presumptions of falsity, malice, and injury, and Plaintiffs prevail.

### *Disposition*

The judgment of the trial court is affirmed. All costs of this appeal are assessed to the State of Louisiana, Department of Wildlife and Fisheries, and Kelly Fannin.

**AFFIRMED.**

7